JAMES H. BROWN v. THE CITY OF GRAND RAPIDS.

*Municipal corporations—Taxation—Review of assessment—Estoppel.*

| | |
|---|---|
| 83 | 101 |
| 84 | 669 |
| 83 | 101 |
| 89 | 4 |
| 83 | 101 |
| 104 | 519 |
| 83 | 101 |
| 106 | 18 |
| 106 | 661 |
| 83 | 101 |
| 114 | 72 |
| 83 | 101 |
| 134 | 99 |
| 83 | 101 |
| 139 | 33 |
| 83 | 101 |
| e150 | 33 |

Where provision is made by law for a review of assessment proceedings, and a body is appointed with power to set the assessment aside or correct the error complained of, and an interested land-owner fails to appear before said body after due notice, or to take any steps to have such correction made, he is not in a condition to appeal to the courts for redress in the absence of fraud or bad faith; citing *Williams v. Saginaw*, 51 Mich. 120; *Comstock v. Grand Rapids*, 54 Id. 641; *Lumber Co. v. Crystal Falls*, 60 Id. 510.

Appeal from superior court of Grand Rapids. (Burlingame, J.) Argued July 1, 1890. Decided November 14, 1890.

Bill to remove a cloud caused by the sale of complainant's land in satisfaction of a special assessment, etc. Defendant appeals. Reversed, and bill dismissed. The facts are stated in the opinion.

*M. L. Dunham* (*A. D. Cruickshank*, of counsel), for complainant, contended:

1. There was fraud in making the district and in assessing the benefits, and for those reasons the assessment is void. The law has a standard for measuring the intent of parties, and declares an illegal act, prejudicial to the rights of others, a fraud upon such rights, although the parties deny all intention of committing a fraud; citing *Kirby v. Ingersoll*, Har. Ch. 172.

2. Fraud is as properly made out by marshaling the circumstances surrounding the transaction, and deducing therefrom the fraudulent purpose, when it manifestly appears, as by presenting the most positive and direct testimony of actual purpose to deceive. Circumstantial proof in most cases can alone bring the fraud to light, for it is a wrong of secrecy and circumvention, and is to be found not in the open proclamation of the wrong-doer's purpose, but by the indication of covered tracks and

studious concealment; citing *Hopkins v. Sievert*, 58 **Mo.** 201; Cooley, Torts, 475.

3. Whatever advantage a corporate officer takes of others because of his official position, which is unfair to others in the corporation, is a fraud; citing Cooley, Torts, 520; and fraud vitiates all acts, however solemn; citing Best, Ev. §§ 227, 595.

4. There was no legally ordained basis of apportionment of the award, and this burden was not spread over the taxing district according to any uniformly applied rule, and for these reasons the assessment is void; citing *Motz v. Detroit*, 18 Mich. 495; *Thomas v. Gain*, 35 Id. 154; *Clay v. Grand Rapids*, 60 Id. 452; *Detroit v. Daly*, 68 Id. 503; *White v. Saginaw*, 67 Id. 33; *Woodman v. Auditor General*, 52 Id. 30.

*J. W Ransom* (*Wm. Wisner Taylor*, of counsel), for defendant, contended:

1. That the Legislature may empower the common council to determine what property is benefited by the improvement, and determine the taxing district accordingly, cannot be doubted; citing *Hoyt v. East Saginaw*, 19 Mich. 39; *Warren v. Grand Haven*, 30 Id. 24; and the Legislature may authorize the apportionment of the assessment by commissioners after the district benefited has been defined by the common council; citing *Hoyt v. East Saginaw*, 19 Mich. 39.

2. Where the assessment is to be made upon a district benefited, and is left to the discretion of the municipal authorities, the exercise of the discretion to tax such district raises the presumption of benefits, and cannot be impeached in the absence of fraud; citing Welty, Assess. §§ 308, 309; *Cook v. Slocum*, 27 Minn. 513; *State v. Dist. Court*, 29 Id. 65; *Fagan v. Chicago*, 84 Ill. 231; *Brewster v. Davenport*, 51 Iowa, 427.

3. It is a matter of discretion with the governing power of the municipality to determine whether the property benefited shall bear the expense, or whether the cost of the improvement shall be made a public charge; and this discretion, when exercised, is not the subject of review by the courts. This proposition is supported by the authorities last cited.

4. Where the charter (or law) confers upon the city council power to determine upon the expediency or necessity of measures relating to local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such cases, the common council or governing body necessarily has, to a greater or less extent, a discretion as to the manner in which the power shall be used. In such case the decision of the

proper corporate officer is, in the absence of fraud, final and conclusive, unless they transcend their powers; citing 1 Dill. Mun. Corp. (3d ed.) § 94; *Page v. St. Louis,* 20 Mo. 136.

5. No fraud whatever is shown in this case in the exercise of the power; nor can there be any pretense but that the common council acted within the scope of its powers in forming the district. But the complainant, by his bill, apparently asks the court to presume otherwise; to *presume* that the council acted fraudulently; to *presume* that it went beyond the scope of its powers in forming the district. There is no proof whatever to sustain the allegation of fraud in the bill, nothing to show that the council did not act with the utmost fairness. The presumption is the other way. Courts are bound to presume that a legislative body will exercise any discretion with which it is clothed properly, and that it had sufficient reason for doing an act the result of such discretion; citing 1 Dill. Mun. Corp. (3d ed.) § 94 (note 1); *Railroad Co. v. Mayor,* 1 Hilton, 562; *Gas Co. v. Des Moines,* 44 Iowa, 508.

6. Where by its charter a municipal corporation is empowered, if it deems the public welfare or convenience requires it, to open streets or make public improvements thereon, its determination, whether wise or unwise, cannot be judicially revised or corrected; citing 1 Dill. Mun. Corp. (3d ed.) § 95.

7. The fair and honest exercise of their judgment by the commissioners can result in no legal wrong to complainant. Even where an actual wrong is done, there is no remedy unless it be a legal wrong; and a legal wrong cannot arise from the exercise of a lawfully vested discretion, the exercise of which cannot be reviewed; citing *Sage v. Laurain,* 19 Mich. 137.

8. The duties of the commissioners in *spreading* an *assessment according to benefits* we submit are *quasi* judicial, and no action can be predicated upon an erroneous performance of these duties; citing *Bay County v. Brock,* 44 Mich. 45; and the presumption is that a public officer has faithfully and *correctly* performed his duty; citing *Clark v. Mowyer,* 5 Mich. 462, 484; *Peck v. Cavell,* 16 Id. 9; *Auditors v. Benoit,* 20 Id. 176; *Blair v. Compton,* 33 Id. 414; *Smith v. Rich,* 37 Id. 549; *Westbrook v. Miller,* 56 Id. 148.

9. Even where an assessor has omitted lands from his assessment roll, the presumption is that he has done his duty, and that they were properly omitted; citing *Perkins v. Nugent,* 45 Mich. 156; which presumption also applies where a demand is an essential prerequisite to a levy for a tax, it not appearing that demand was made before levy; citing *Wood v. Thomas,* 38 Mich. 686; and the presumption of performance of official duty,

supports the action of boards as well as of officers acting singly; citing *Upjohn v. Richland,* 46 Mich. 542.

10. The certificate of the commissioners annexed to the assessment roll in this case is full, and shows in detail the action of the commissioners in making the assessment, and that they proceeded in accordance with the provisions of law in spreading the assessment. This certificate is official, and therefore has all the weight, as evidence of the facts therein contained required to be certified, as the certificate of a supervisor to his roll of valuation. A supervisor's official certificate of valuation is legal evidence in *collateral* proceedings involving the validity of the tax, and cannot be contradicted by parol evidence; citing *Blanchard v. Powers,* 42 Mich. 619; and the supervisor's certificate of valuation attached to an assessment roll cannot be contradicted in any proceeding to enforce the tax; citing *Gamble v. East Saginaw,* 43 Mich. 367.

LONG, J. The complainant is the owner of lots 1, 3, 6, 8, 9, 10, and the west 54 feet of lot 11, of J. H. Brown's addition to the city of Grand Rapids. These lots were platted by complainant 66 feet wide by 165 feet deep, and are on the south side of Wealthy avenue, between Grandville avenue on the east and Oakland avenue on the west.

Wealthy avenue, between Grandville and Oakland avenues, up to June 7, 1886, was only 33 feet in width. At that date, the common council of the city of Grand Rapids adopted a resolution requesting the city surveyor to furnish it with a description of the property necessary to be taken to open and widen Wealthy avenue between Grandville and Oakland avenues to the width of 66 feet. Some time afterwards, and prior to August 2 following, the city surveyor filed his report with the city clerk, showing that it was necessary to take 33 feet off the north end of all of the property then lying on the south side of Wealthy avenue between Grandville and Oakland avenues. Proceedings were then taken by the city council up to and including the condemnation of this strip of land for said street, and an award was made by

a jury of $8,805 to the property-owners therefor, of which amount the complainant was awarded $4,205.

On February 14, 1887, the·common council appointed a committee consisting of three of the aldermen to locate a district upon which to assess the said $8,805, and a few days thereafter the committee made a report fixing the boundaries of such district, which report was adopted by the council.  On November 28 following, the council adopted a resolution declaring that district to be the property benefited by the widening of such street, and to the extent of the award made by the jury to the property-owners, and that the entire of said sum be assessed upon the property within such assessment district.  By said last resolution, the board of review and equalization of said city were directed to make an assessment of said sum in proportion to the benefits of each parcel of land therein by reason of such public improvement.  The board completed such assessment, and on January 9, 1888, reported it to the council.  The complainant was assessed for such benefits the sum of $2,447.25.  January 16, 1888, was fixed as the day of hearing appeals from said assessment, and notice thereof was duly published as required by law.  Several appeals were taken, and over-ruled by the council, and on January 23 said roll as made by the board of review was confirmed by the council.

The complainant did not appeal, but received and took the award made by the jury as his damages.  Upon this strip of land taken from the complainant's premises were several buildings, which the complainant purchased from the city and moved back upon his lots off the line of the street.  No complaint is made of the proceedings taken to condemn the property, or of the amount of the award for damages.  The only questions raised relate to the making of the assessment district, and the amount assessed

upon the property of complainant. Complainant refused to pay the taxes so assessed upon the several parcels of land owned by him, and the same were duly advertised and sold to the city of Grand Rapids for the amount of each assessment, and interest for such improvements. On October 23, 1888, complainant filed his bill to remove the cloud from the title, praying that the title to his lands be freed from any cloud by reason of such assessment and sale for such assessment. The court granted the relief prayed. The city appeals.

It is insisted by the complainant:

"1. That in making the assessment district the said common council intended to and did so make it as to cause an unjust and unfair proportion of said burden to be assessed upon that portion of said district lying south of said Wealthy avenue, and between Grandville avenue and Oakland avenue; that the motives and acts of said council in making the said district were unlawful and fraudulent.

"2. That the taxing district does not include all the property in the vicinity of and benefited by the improvement.

"3. That the board of review and equalization in spreading said sum of $8,805 acted arbitrarily, without an apportionment thereof, and without any basis or rule therefor.

"4. That said assessment roll did not contain the valuation of property in said district as made by said board of review, and that, in and by said roll, and all other proceedings in making said assessments against complainant's said lots, no such basis or rule was adopted that complainant is able to determine therefrom what amount he should pay according to the apportionment of said board of review.

"5. That the course pursued by the said board of review in making such assessments was wrong, illegal, and arbitrary, and aimed at the general purpose of compelling the complainant to pay more than his fair share of this assessment.

"6. That the amounts assessed upon the complainant's said lots do not bear any reasonable relation to the

whole amount sought to be raised, nor to the amount assessed upon the land or property of others.

" 7. That complainant's said lots were not benefited in such sums as were assessed thereon.

" 8. That this proceeding, in effect, compels complainant to donate his property to the public use, without compensation therefor."

The charter of the city of Grand Rapids provides that the common council shall have full power to lay out, establish, open, extend, widen, straighten, alter, close, fill in or grade, vacate or abolish, any highway, etc., in said city whenever they shall deem it a necessary improvement, and that private property may be taken therefor, but the necessity for taking, and just compensation to be paid, shall be ascertained by 12 freeholders residing in said city. Proceedings were taken under the charter provisions, and the award of the jury was duly confirmed. An assessment district was fixed under resolution of the council as follows:

" All lots, parts of lots, and pieces of land included within the following described boundaries: Commencing at a point on the east line of the city of Grand Rapids, 100 feet north of the north line of Wealthy avenue, in said city; thence south on said east city line 266 feet; thence west, parallel with the south line of said Wealthy avenue, and distant 100 feet south therefrom, to a point 100 feet east at right angles from the easterly line of Grandville avenue; thence southerly, parallel with the street line last mentioned, to a point 132 feet south of the south line of Wealthy avenue; thence west, parallel with said line last mentioned, to the west line of King's addition to the city of Grand Rapids; thence south along said line, and said line produced, to a point 367 feet south of said Wealthy avenue, as opened and widened; thence west parallel with said Wealthy avenue, and said avenue extended, to the east bank of Grand river at low-water mark; thence northerly along said river bank at low-water mark to a point 100 feet north at right angles from the north line of said Wealthy avenue; thence east, parallel with said line last mentioned, to the place of

beginning. Excepting therefrom all public streets and alleys, also the premises taken for such opening and widening."

The assessment district having been fixed and determined, the council by resolution directed the board of review and equalization of the city, who by the charter are constituted commissioners for that purpose, to make said assessment upon all the owners or occupants of lands and houses within the district aforesaid, in proportion, as nearly as may be, to the advantage which each should be deemed to acquire by the making of such public improvement, and that the commissioners meet for the purpose of making such assessment on Wednesday, November 30, 1887, at 10 o'clock in the forenoon, at the office of the city clerk. It appears that the commissioners did meet and make the assessment as directed by the resolution of the council. The roll so made by them was reported by the commissioners to the council on January 9, 1888, whereupon the council fixed January 16, 1888, as the time, and the council room in the city of Grand Rapids as the place, when and where it would hear appeals from said assessment roll, and gave notice thereof by publication in the Daily Democrat, a public newspaper of said city, and the designated official paper of the city at that time. The notice was giving in accordance with the charter provisions of the city, and no objection seems to be made to its sufficiency.

Section 8, title 6, of the charter provides that, upon the return being made and filed,—that is, the assessment roll made by the commissioners,—the clerk of the city shall cause notice of the names being returned to his office to be published in a newspaper of said city for such time as the council shall direct, and that the common council will, on such day as they shall appoint, proceed to hear any appeals from the said assessment, etc. The

next section provides for a hearing before the council, and gives the council full power over the assessment, to either ratify and confirm the assessments made by the board of commissioners or to make corrections therein, or to wholly set aside the assessments, and order a new assessment to be made. It is not contended but that all these proceedings were duly taken, the notice published, and that the council met on the day appointed, heard appeals, and confirmed the report made by the commissioners. The complainant did not appear, and took no appeal from the assessment so made. Counsel claimed on the hearing in the court below that complainant had no notice of the time and place fixed by the council to hear appeals. But whether this be so or not, the time and place were fixed, and notice by publication given, as required by the charter, and it must be held sufficient notice. We are not satisfied, however, from the record that complainant did not have actual notice of the time and place to hear appeals.

He did not appear, and does not pretend that he made any effort to have the assessment corrected before the council. The determination of these two bodies, the commissioners who made the assessment roll, and the common council of the city of Grand Rapids, cannot now be inquired into, unless it appears that they acted in bad faith. It is not for this Court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgments. Where provision is made by law for a review of assessment proceedings, and a body appointed with the power

to set the assessment aside or correct the error complained of, and the party wholly fails to appear before such body, or take any steps to have such correction made, he is not in a position to appeal to the courts for redress in the absence of fraud or bad faith. *Williams v. Saginaw,* 51 Mich. 120 (16 N. W. Rep. 260); *Comstock v. Grand Rapids,* 54 Id. 641 (20 N. W. Rep. 623); *Peninsula Iron & Lumber Co. v. Crystal Falls,* 60 Id. 510 (27 N. W. Rep. 666).

We need not discuss the other questions raised, as this must dispose of the case. The decree of the court below must be reversed, with costs of both courts, and decree entered here dismissing complainant's bill.

The other Justices concurred.