POWER v. CITY OF DETROIT.[1]

1. MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENT DIS-
TRICT—DISCRETION OF COUNCIL—REVIEW BY COURT.

On a bill to set aside an assessment of benefits made in pro-
ceedings to open a street, evidence examined and *held*, that
the establishment of an assessment district 300 feet in width
on each side of the street, the whole length thereof, as newly
opened, and assessing the whole expense to the property bene-
fited, instead of a portion to the city at large, was not an
abuse of discretion.

2. SAME—BUILDINGS ON LAND TAKEN—FUND ARISING FROM SALE.

Where a building on land taken for a street is sold, but the
assessment of benefits is made without deducting the money
so received from the expense, as required by Act No. 236,
Pub. Acts 1889, the assessment is not wholly void, but the
court may direct the making of the proportionate reduction
and allow the assessment as amended to stand.

3. SAME—TIME OF PAYMENT—DETROIT CHARTER.

Assessments of benefits for opening streets in the city of De-
troit are properly made payable all at one time, notwith-
standing section 3406, 1 Comp. Laws, directs that such assess-
ments shall be levied and collected as near as may be in the
same manner that is provided in the charter of the municipal-
ity for levying and collecting the expense of grading streets,
and the charter of Detroit provides (Act No. 489, Local Acts
1887, § 44) that grading assessment rolls shall be made in
four parts, the charter provision not being applicable.

4. SAME — CONTEST — REDUCING ASSESSMENT — INTEREST AND PEN-
ALTIES.

Where a lot owner refuses to pay any portion of his assess-
ment for a street improvement, and litigates the whole of it,
he is liable for such penalties and interest as are fixed by law
on such portion of the assessment as is held valid on final de-
termination, though the original assessment was reduced.

Cross-appeals from Wayne; Rohnert, J. Submitted
January 3, 1905. (Docket No. 1.) Decided February 4,
1905.

---

[1] Rehearing denied September 21, 1905.

Bill by William H. Power and others against the city of Detroit and Albert Stoll, receiver of taxes, to set aside an assessment of benefits on opening a street. From the decree rendered, all parties appeal. Modified.

*Walker & Spalding*, for complainants.

*A. B. Hall* (*Timothy E. Tarsney*, of counsel), for defendants.

MOORE, C. J.   This is a suit to set aside assessments made on complainants' lands because of the opening of Warren avenue.   The decree below sustained the assessments, providing, however, for their reduction by their respective proportions of the sum of $850 unlawfully included in the original assessment, and further provided that the assessments so reduced might be paid without interest or penalties within 60 days after the final determination of the cause.

Complainants claim the decree should set aside the assessments.   The defendants claim that, while the pro rata reduction of the assessments was proper, the payment of interest as well as penalties should have been required.

The case was originally heard by Judge Frazer, who entered a decree setting aside the assessments on the ground that the council had grossly abused its discretionary power in so constituting the assessment district as to impose the entire expense of opening the street upon a part only of the property specially benefited.   One of the main items of the evidence on which this decree was based was a plat put in evidence by the complainants purporting to show the boundary line of the assessment district.

After the appeal of the case to the Supreme Court it was discovered that most of the irregularities in the district boundary as shown by this map did not exist.   It was then stipulated the case should be remanded and reheard. From a decree rendered by Judge Rohnert all parties appeal.

The complainants contend:

1. That the assessments should be canceled: (*a*) Because the evidence shows a clear abuse of discretion by the common council in imposing the entire expense of the street opening upon a local district so narrow as to include but a small part of the property specially benefited, and without making any deduction either on account of the general benefit to the public at large from the improvement or on account of the fact that $850 of the expense had already been reimbursed to the city by the sale of a building taken in the street opening proceedings. (*b*) Because, irrespective of abuse of discretion, the assessment of the entire award without deduction of the amount received from the building sale is illegal. (*c*) Because the assessment roll was made in one part, payable at once, instead of in four parts, so as to spread the payment of the assessments over four years.

2. That, even if the assessments at the reduced amount were properly sustained, the inclusion in the original assessment of the amount of $850 derived from the building sale was admittedly illegal, and the city, therefore, would have no right to either interest or penalties on the amount that could have been rightfully assessed until that amount was ascertained by competent authority, and opportunity afforded to pay it.

These contentions will be taken up in the order presented.

Judge Rohnert, who heard the case, was of the opinion that no abuse of discretion was shown on the part of the common council which would justify him in setting aside the assessment. The assessment district, as fixed by the council, was approximately 300 feet in width on each side of Warren avenue, the whole length thereof as newly established. After the award for damages was made, a building was sold for $850, which was upon the property taken. For some reason there was a failure to deduct this amount from the amount of the assessment. None of the complainants made any tender of any portion of the assessment. It is the claim of the complainants that, because of the peculiar position of this street to that portion of the city, large areas of property outside of the assessment district were substantially benefited, and that it was a great abuse of discretion not to make the assessment dis-

trict larger, or else to require the city at large to share in the expense.

A like claim to this has been made in a number of cases heretofore heard in this court. In *Brown* v. *City of Grand Rapids*, 83 Mich. 101, it was said:

"The determination of these two bodies—the commissioners who made the assessment roll and the common council of the city of Grand Rapids—cannot now be inquired into, unless it appears that they acted in bad faith. It is not for this court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgments. Where provision is made by law for a review of assessment proceedings, and a body appointed with the power to set the assessment aside or correct the error complained of, and the party wholly fails to appear before such body, or take any steps to have such correction made, he is not in a position to appeal to the courts for redress in the absence of fraud or bad faith"—citing *Williams* v. *City of Saginaw*, 51 Mich. 120; *Comstock* v. *City of Grand Rapids*, 54 Mich. 641; *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls*, 60 Mich. 510.

In the case of *Davies* v. *City of Saginaw*, 87 Mich. 439, 449, this court said:

"In matters involving the discretion or judgment of the common council, where no bad faith or fraud is alleged, parties cannot go behind the recorded vote to show either want of knowledge or of good judgment. * * * The resolution of the council fixing the assessment district and declaring that the sum of $8,544.97 should be assessed upon the property of that district was a legal determination, under the charter, that the benefits conferred upon that district were equal to such amount; and the spreading of the aggregate amount upon the assessment roll, and the confirmation of that roll by the council, determined that the proportion of the aggregate benefit received by each parcel was equal to the burden imposed, and, in the absence of fraud, oppression, or manifest mistake, such determinations are conclusive."

139 MICH.—3.

See, also, *Beecher* v. *City of Detroit*, 92 Mich. 268; *City of Detroit* v. *Daly*, 68 Mich. 509.

In *Powers* v. *City of Grand Rapids*, 98 Mich. 393, the following language was used:

" It cannot be said that the improvement does not benefit complainant's property, and the measure of that benefit is for the council and commissioners.   These officers acted within the scope of their powers, and the record contains no evidence of fraud, corrupt motive, or intentional favoritism.   The presumption is that in making the district and the assessment the officers of the municipality acted in good faith, and have correctly and faithfully exercised the discretion reposed in them.   In such case, where mistake or abuse of discretion is not manifest or demonstrable, the determination of the municipal officers in whom such discretion is vested is conclusive, and it is not reviewable by the courts.   1 Dill. Mun. Corp. § 94."

See, also, *Voigt* v. *City of Detroit*, 123 Mich. 547; *Goodrich* v. *City of Detroit*, 123 Mich. 559.   We think the trial judge was right in refusing to set aside the assessment upon the ground of an abuse of discretion.

Are counsel right in saying that, irrespective of abuse of discretion, the assessment of the entire award without deduction of the amount received from the building sale is illegal ?   It is argued:

"The power of the court is limited to setting aside the action complained of.   It may not substitute its own discretion for that of the council, and determine the just amount to be assessed on the district.   It may not, when the determination of the council is illegal because of the imposition of a greater sum than they might lawfully impose, decree that the imposition shall be reduced to the lawful limit, for this is to determine that the just amount is the full amount that the council might impose, and to usurp the power of the council to determine that just amount.   *   *   *   It is not certain that, because the council once decided to impose an amount illegally excessive, it would a second time decide to impose the same amount less the illegal excess."

Section 23, Act No. 124, Pub. Acts 1883, as amended

by Act No. 236, Pub. Acts 1889 (1 Comp. Laws, § 3414), in part is as follows:

" In case there is on the private property taken a building or other structure, the same shall be sold by or under the direction of the common council, board of trustees, or board of supervisors; the amount produced by the sale shall belong and be paid to the fund for paying the compensation awarded for the property taken, and the common council * * * shall cause such amount to be credited and applied in reduction pro rata of the assessment and apportionment made to pay for the property taken, provided that such assessments equal the amount awarded for the property taken."

This amount should have been deducted from the assessment levied. It is clear any injustice done the complainants can be remedied by a simple mathematical calculation as provided for by the court below.

The next question is, Should the assessment be set aside because the assessment roll was made in one part, payable at once, instead of in four parts, so as to spread the payment of the assessments over four years? The argument of counsel for complainants is that section 15 (§ 3406, 1 Comp. Laws) of the street opening law provides that " the assessment shall be made and the amount levied and collected in the same manner and by the same officers and proceedings, as near as may be, as is provided in the charter of the municipality for assessing, levying, and collecting the expense of a public improvement when a street is graded;" while section 44, Act No. 489, Local Acts of 1887, provides that, where a street is graded, the assessment roll shall be made in four parts; therefore this assessment should have run through four years. We do not think this conclusion necessarily follows. In the case of the grading of a street the charter provides for the issuing of bonds payable in one, two, three, and four years, corresponding to the times when the assessments will be due. In the case of street openings there is no such provision, and the law provides for the payment of the awards within a year from the time when the award is con-

firmed.   We think the provision quoted relates to the general method of levying and collecting the taxes.   See *Trowbridge* v. *City of Detroit,* 99 Mich. 443; *Goodrich* v. *City of Detroit,* 123 Mich. 559.

The remaining question is, Are counsel right in saying " that, even if the assessments at the reduced amount were properly sustained, the inclusion in the original assessment of the amount of $850 derived from the building sale was admittedly illegal, and the city therefore would have no right to either interest or penalties on the amount that could have been rightfully assessed until that amount was ascertained by competent authority, and opportunity afforded to pay it ? "   Counsel say in the brief:

" The provisions of the charter regarding general taxes and special assessments show clearly that the former are, while the latter are not, subject to the addition of interest and penalties.   After providing explicitly for interest and penalties upon general taxes, and for the collection of these additions as well as the original tax by the sale of real estate against which the tax is assessed, the charter passes to the subject of special assessments, and as to them provides merely (section 181) that in default in payment 'they are to be collected by such proceedings as are or shall be prescribed by law' or ordinances, and that sales for any unpaid assessment are to be made in like manner and with like effect as are sales for a general tax."

Section 181, charter of Detroit, reads:

" Assessment rolls to defray the expense of constructing lateral sewers, side and cross walks, paving, grading, macadamizing, graveling, or otherwise improving streets, lanes, or alleys, or for defraying the expense of any local improvements properly payable from the proceeds of special assessments, shall be placed in the hands of the receiver of taxes for payment, as may be provided by ordinance or resolution of the common council, for the space of thirty days, after which warrants for the collection of the same may be issued, and such proceedings for the collection thereof be had as are or shall be prescribed by law, or by any ordinance or resolution of the common council and sales of any real or personal estate for any unpaid assess-

ment shall be made in like manner, and with like effect, as in case of sales for the nonpayment of the general tax."

We think this charter provision is broad enough to authorize the ordinances which provided for penalties and interest in cases like this.

It is said, however, by counsel, that, if—

"The power to impose interest or penalties on such an assessment exists, there is no liability for interest or penalties on the amount of an assessment which includes an unlawful addition, and, inasmuch as the taxpayer could not, by the tender of anything less than the full original assessment, secure a discharge of his liability, there is no duty to make tender, and there is no liability for any interest or penalties until the amount of the assessment is reduced by competent authority, and the taxpayer thereby enabled to discharge his liability. The ground of this proposition is clear. There can be no liability for interest until the taxpayer is in default in performance of his duty. The assessment in question is excessive through an admittedly illegal addition. It was not his duty to pay it, nor was it his duty to tender the amount of the original assessment, less his proportionate part of the illegal addition. The duty to pay and the right to a cancellation of the assessment upon payment are correlative. No officer could have accepted such a tender if made, nor have issued thereon a receipt for the payment of the assessment or canceled it on the assessment roll"—citing *Matter of St. Joseph's Asylum*, 69 N. Y. 353, and other cases.

Some of the cases cited are where a tender of the legal portion of the tax had been made. It must be admitted, after an examination of the authorities, that they are not uniform. We have already stated no tender of payment of any portion of the assessment was made. It has also been said that the amount to be deducted because of the wrongful inclusion of the $850 could be easily determined by a mathematical calculation. The question is a new one in this State.

In *Western Union Telegraph Co. v. State*, 64 N. H. 265, it was held upon appeal from an assessment that the tax was too large by two-fifths, and the same was reduced to three-fifths. The plaintiff had not offered to pay any

part of either tax, and the question was whether it should be required to pay interest under the laws of New Hampshire. The court said:

"It would be unjust to require the plaintiffs to pay interest on the two-fifths .that are abated and disallowed. But the plaintiffs claim that they should not be required to pay any interest, as the final determination of their assessment was not made till June, 1886, and none could accrue under the statute till the December after; but we think that when the State board of equalization made their assessment, and certified it to the State treasurer, they made the assessment required by the statute, and that it was not the intention of the legislature to give the plaintiffs the use of the money justly due the State on or before December 1, 1884 and 1885, one and two years' interest as a compensation for taking the appeal. All other taxpayers either paid their taxes on or before the 1st of December of these years, or became liable to pay interest thereafter till they did pay them, and justice requires that the plaintiffs should pay interest on their just and equal portion of the public burden due the State. * * * Had the plaintiffs tendered or offered to pay, when due, the sum afterwards found to be their proportional share, and the State had declined or neglected to take the same, a different case would be presented [citing cases]. A taxpayer appealing from an excessive assessment may be unable to determine the exact amount which would be found by the appellate court to be his share of the public expense. He may be unable to protect himself against the interest that will accrue after the 1st of December by paying the exact amount of his tax debt before it is ascertained. But this is not a reason for giving him an exemption that is not enjoyed by his neighbors who do not appeal. * * * The appealing taxpayer can protect himself against interest by paying enough of the amount assessed and afterwards recovering any excess that may be abated."

This case was afterwards approved in the case of *Winnipiseogee Lake Cotton & Woolen Manfg. Co.* v. *Gilford*, 64 N. H. 514. See, also, *Mackay* v. *City and County of San Francisco*, 113 Cal. 392.

In the case of *Cedar Rapids, etc., R. Co.* v. *Carroll County*, 41 Iowa, 153, the court said:

" It is urged that the penalties are onerous, inequitable, and oppressive; that they have accrued while plaintiffs were in good faith contesting the rights of the defendant to enforce them; and that the questions of law involved were doubtful, and justified the plaintiffs in resisting the payment of the taxes. That plaintiffs will suffer a hardship in the payment of these heavy penalties is very apparent. That the questions involved in the cause were doubtful, and the litigation has been prosecuted in good faith, may be conceded, but these things give us no authority to annul a statute and remit a penalty explicitly provided for, and in which defendant has a vested right. The delay incident to the progress of this cause, especially in this court, has been great, and plaintiff has been subjected thereby to suffer from the enormous increase of the penalties. This is no ground for relief. It is an incident of litigation, the risk of which parties are required to assume."

In the case of *Western Union Telegraph Co.* v. *State*, 146 Ind. 54, the court said:

" In the event that one is called upon to pay a tax which he believes to be illegal, he has two courses open to him. He may resist payment at the hazard of all penalties in case the decision shall be against him; or he may pay the tax under protest, and then, in case the decision is in his favor, demand the return of his money. See *Rumford Chemical Works* v. *Ray*, 19 R. I. 456. No one need pay any penalty except through his own wrongful act.

" The government is in need of its revenues, and these revenues will be paid promptly by all good citizens. In case of failure to comply with such duty such penalties will be imposed as will, in the judgment of the lawmaking power, best compel compliance with the law in each case, to the end that all the property owners of the State may bear their equal share of the public burden. Such penalties, as we have seen, are never imposed upon those that pay their taxes when due. The imposition of the penalty being an effort on the part of the lawmakers to compel good citizenship on the part of all taxpayers, that none may shirk the common duty."

See *Challiss* v. *Baker*, 12 Kan. 253; also *State Railroad Tax Cases*, 92 U. S. 575, for an interesting discussion of some of the principles applicable to this case.

The reasoning of these cases appeals to us. We can see no valid reason why the taxpayer who neglects or refuses to pay any portion of his assessment and litigates all of it should not be required to pay such penalties and interest as are fixed by law upon such portions of the assessment as are held to be valid.

A decree will be entered in accordance with this opinion. The defendants will recover costs.

MCALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.