### GRAHAM v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—SEWERS.

Under special authority conferred by an act of the legislature (Act No. 668, Local Acts 1905), the city of Grand Rapids was legally empowered to convert an open ditch into a covered sewer and to levy a special assessment for the improvement on neighboring parcels of real estate and to include premises which did not connect directly with the sewer or abut on it.[1]

2. SAME—TAXATION.

Lands on the line of the sewer do not usually receive all the special benefits and therefore should not pay all the cost; but in a clear case of assessment for special benefits for a sewer upon lands which could not possibly be benefited, the court may interfere.

3. SAME—PRESUMPTIONS.

The presumption is that in making a tax district and assessment, officers of a municipality have acted in good faith and have correctly performed their duty and in the absence of proof of mistake or fraud their determination is conclusive.

4. SAME.

*Held*, that the evidence sufficiently sustained a special assessment for a public sewer in proportion to benefits received.

Appeal from superior court of Grand Rapids; Stuart, J. Submitted October 13, 1913. (Docket No. 29.) Decided March 27, 1914.

Bill by Robert D. Graham and others against the city of Grand Rapids for an injunction against a special assessment. From a decree for defendant, complainants appeal. Affirmed.

---

[1] As to what property is liable for assessment for construction of drains or sewers, see note in 26 L. R. A. (N. S.) 973. On the question who is liable for the expense of drainage, see note in 58 L. R. A. 353. And as to assessments for drains and sewers, generally, see note in 60 L. R. A. 227.

*Colin P. Campbell,* for complainants.

*R. M. Ferguson,* for defendant.

MOORE, J.    This is a bill filed to enjoin a special assessment made to pay the cost of making a covered sewer out of an open one, and placing a pumping station at its lower end, for the purpose of pumping the contents of the sewer over an embankment in times of high water in the river into which the sewer flows, so as to prevent backwater from the river overflowing the lands through which the sewer flows.    This work was undertaken because the constant annual cleaning of the open ditch was expensive, and because the backwater from the river in times of high water menaced the health of the citizens.    Witnesses say that noisome odors came from it, and that it was more or less the cause of disease.    Proper steps were taken declaring it a necessary public improvement, and its construction was undertaken.    The work is regarded by the city authorities as a trunk sewer, and is about six or seven feet in diameter.

Complainants are the owners of 20 acres of land bounded on the north by Bridge street, on the west by John Ball Park.    The east line of their land is 2,000 feet west of the trunk sewer.    The land was assessed $1,000, payable in ten equal annual installments.    A hearing was had in open court.    From a decree dismissing the bill of complaint, the case is brought here by appeal.

We quote from the brief of appellant:

"Complainants claim:    *First,* that the assessment in question was in excess of the jurisdiction of the board of assessors of the city of Grand Rapids, in that the construction of the sewer conferred no benefit upon complainants' property other or different from the benefits conferred upon all other property of the community.    *Second,* that complainants' property was not benefited in such a special and peculiar man-

ner as would warrant its inclusion in a special assessment district, and would justify the impression upon it of a special assessment for the construction of the sewer. *Third,* that the fact that the property is within the drainage area of the sewer so long as the drainage of the property is not improved and so long as actual connection with the sewer is not furnished does not warrant imposing a special assessment upon the property."

Each of these propositions is argued at length, and counsel cite authorities that sustain his contention as to his last proposition. but none of them are from this State.

It is the claim of counsel that the land is farming property; that it does not receive any appreciable benefit; that the land is not abutting upon the sewer; that its drainage is not benefited; and that any prospective benefit could not be considered.

It may be wise to get a general idea of the situation. Grand river runs nearly north and south through Grand Rapids, until it gets south of Bridge street, which is one of the main east and west streets of the city. The river then runs to the southwest, until it crosses the west city limits. West and north of the river there is a wide area of comparatively low and level land. About midway between the west city limits and that portion of the river running north and south, there has been for many years an open ditch or sewer running generally in a north and south direction, and emptying into Grand river, where the river runs in a southwesterly direction. During a period of heavy rains, Grand river would back up in this open ditch, and a wide area of land would be flooded. This ditch ran under the tracks of a railroad company, which were laid upon a high embankment near the river, and nearly parallel to it. It was conceived that if the open ditch was made a covered sewer, with a pumping station just north of the rail-

road embankment, that, by shutting out the water from the river and pumping the contents over the embankment into the river, a flood could be practically prevented and the sewer be made an available sewer all the time. This undertaking involved a large expense, and, in view of the situation, the legislature was appealed to. By Act No. 668, Local Acts of 1905, it authorized the conversion of the open ditch into a sewer and the issuing of bonds. We quote from the act:

"SEC. 2. If the common council shall by resolution determine that the whole or any part of the said improvement shall` be defrayed by an assessment upon the owners of real estate to be benefited by said improvement, after having ascertained the estimated expense of said improvement it shall declare by an entry in its minutes which proportion thereof shall be assessed to such owner specifying the whole sum to be assessed and the portion of the city which it deems benefited by such improvement. The costs and expense of making the estimates, plans and assessments incidental thereto, shall be included in the expense of such improvement.

"SEC. 3. All the provisions of title six of an act to revise the charter of the city of Grand Rapids, approved June sixth, nineteen hundred five relative to the streets and public improvements and relative to ascertaining the cost, ordering improvements and assessing the cost of making assessment rolls and street improvements, shall be applicable to the ascertainment of the cost of the West Side Big Ditch improvement, to be paid for by the proceeds of the West Side Big Ditch bonds and the assessment of said cost or such portion of such cost as the common council may determine by a majority vote on the real estate deemed to be benefited thereby. Said assessment roll shall be subject to appeal therefrom to the common council by any of the parties assessed therein and shall be subject to ratification and confirmation by the common council and shall be final and conclusive as in other cases of public improvements under the provisions of said title six, and shall be a lien upon the premises from the date of such confirmation."

An inspection of the record shows that the municipal authorities attempted to and, we think, did follow the provisions of the act.

As before stated, complainants' property is bounded on the north by Bridge street. It is all high ground and would not be flooded by high water. Counsel say it is farming land. Mr. Graham testified to buying the land three years before the trial, and paying for the west ten acres $4,500, and more, though just how much he could not remember, for the east ten acres, and that the land had been platted into one-acre lots.

"It certainly is a fact that we expected to, and expect now to, some time sell off lots from this. The property is in the city, and is not supposed to be used for farm property. The taxes are too high. The property is for sale in whole or any part of it. We expected to sell the property, and platted it for that purpose. We have platted it in acreage property. It is not farm property, it is in the city and assessed as city property, but it was used to raise corn on for the past three years. It was not necessary to plat it for the purpose of raising corn. I don't know whether it would sell for more in small parcels. We haven't sold it. I said a few moments ago that property inside of the city was not supposed to be farm property, but was supposed to be used for building houses on. It is a good theory that this property would be more valuable as lot property than it would be to sell it as one parcel. It don't work out in this case. The property is not worth one cent more than it was the day I got it. I will sell it for what I paid for it. I have endeavored to sell lots off. It has been for sale ever since we bought it."

At another place he testified he had sold one lot on contract for $1,000, and had sold three other lots, but was unable to state for what consideration. He was the only witness for the complainant, who testified as to what effect the construction of the drain had upon the value of his property.

The testimony of the city engineer showed that this property was within the sewer district which was to be served by this great trunk sewer; that Bridge street, which bounded this property on the north, had a sewer which emptied into the trunk sewer where they met at right angles with each other; that the Bridge street sewer was extended west from the trunk sewer to within 150 feet of the northeast corner of the land; and that it was practicable to sewer these lands into the Bridge street sewer. Testimony was offered on the part of the city that these lands were benefited by the construction of the sewer.

In second edition of Cooley on Taxation, pp. 618, 619, it is said:

"As regards sewers and culverts in cities and villages, it is to be remarked that while they are often provided for by special assessments, there is no uniformity of practice in this regard, and perhaps, considering the different offices which sewers perform, being sometimes matters of imperative public necessity, and at others conveniences for a few tenements only, there ought to be the diversity that now prevails. That the cost may be assessed upon the adjacent premises under proper legislation has been often held. * * *

"In the case of sewers it is very common to provide that the cost shall in part be a general levy on the municipality, and in part be collected by special assessment. Perhaps more often than in the case of any other local improvement it is just that such a division of the burden should be made. The lands on the line of a sewer do not usually receive all the special benefits and therefore should not pay all the cost; and when the district is extended to embrace other lands, there is imminent danger of doing injustice by extending it too far. In a clear case of the assessment of special benefits for a sewer upon lands which could not possibly receive special advantages therefrom, the courts have felt bound in some cases to interfere and annul the levy. But a case of the kind ought to be so plain as to admit of no doubt."

In *Warren* v. *City of Grand Haven,* 30 Mich. 24, Justice COOLEY, speaking for the court, said:

"It is also insisted that the tax should have been levied either upon the whole city, or upon a district within which the inhabitants would be benefited thereby as regards health. The argument on this branch of the case assumes that those provisions of the charter which, for sanitary reasons, confer authority upon the council to cause ditches to be opened, and swamps, marshes, and other low lands to be drained, are applicable to the case. But the provisions in the charter for the draining of the natural surface have nothing to do with the case of sewers. Sewers are required for a different purpose altogether, and are usually constructed with little regard to the natural condition of the land, and for the purpose of carrying off, not the natural fall of water, so much as the offensive material the accumulation of which is a necessary result of a dense population, and which, if not removed, would be a cause of discomfort and disease. In the construction of sewers, considerations of convenience to the inhabitants of the particular locality are involved quite as much as those of health; and it would doubtless be competent for the proper authorities to order a sewer opened without taking into the account at all the improvement of the natural surface or the protection of health. And whether or not it would be wiser or more just that the burden should be borne by the city at large, rather than by the particular district thereof in which the sewer is laid, is a question which must be determined by the proper legislative authority, which, in our opinion, would have an undoubted right to designate a special taxing district for the purpose, as was done here."

In *Thomas* v. *Gain,* 35 Mich. 155 (24 Am. Rep. 535), it was said:

"In *Warren* v. *Grand Haven,* 30 Mich. 24, it was held that the court could not say, as matter of law, that an assessment for a sewer, estimated by the foot front of abutting lots, was not laid in proportion to actual or probable benefits. In *Brewer* v. *Springfield,* 97 Mass. 152, an assessment of benefits

by the value of the lands, exclusive of buildings, was sustained. In several cases it has been decided that in assessing benefits the future probable advantages may be considered, as may also be the incidental benefits, equally with those which the land receives directly. See *Soady* v. *Wilson,* 3 Ad. & El. 248; *Hammersmith Bridge Co.* v. *Overseers of Hammersmith,* L. R. 6 Q. B. Div. 230."

See, also, *Mock* v. *City of Muncie,* 9 Ind. App. 536 (37 N. E. 281).

In *Collins* v. *Mayor and Aldermen of Holyoke,* 146 Mass. 298 (15 N. E. 908), the petitioner sought to restrain an assessment upon his lands for the construction of a trunk line sewer, for the reason, among others, that his lands did not abut on the line of the sewer; "that neither the petitioner nor his estate derived any benefit from the sewer either by the entry of any particular drain or by more remote means." In the answer it was alleged "that in the list the assessments were divided into three classes which were called direct benefit, remote benefit and more remote benefit, and that the petitioner was assessed in the third class," and it was insisted that while petitioner was not an abutter in the sense he was an adjoining owner, that his estate was benefited by the sewer. It was held:

"As a convenient method of equitably adjusting the assessments, the members of the board might, if they saw fit, divide them 'into three classes, direct benefit, remote benefit, and more remote benefit' "—and the assessment was sustained.

In *Power* v. *City of Detroit,* 139 Mich. 30 (102 N. W. 288, 5 Am. & Eng. Ann. Cas. 645), appears the following:

"It is the claim of the complainants that, because of the peculiar position of this street to that portion of the city, large areas of property outside of the assessment district were substantially benefited, and

that it was a great abuse of discretion not to make the assessment district larger, or else to require the city at large to share in the expense.

"A like claim to this has been made in a number of cases heretofore heard in this court.

"In *Brown* v. *City of Grand Rapids*, 83 Mich. 101 [47 N. W. 117], it was said:

" 'The determination of these two bodies—the commissioners who made the assessment roll and the common council of the city of Grand Rapids—cannot now be inquired into, unless it appears that they acted in bad faith. It is not for this court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the' commissioners did not assess the complainant's lands in accordance with their best judgments. Where provision is made by law for a review of assessment proceedings, and a body appointed with the power to set the assessments aside or correct the error complained of, and the party wholly fails to appear before such body, or take any steps to have such correction made, he is not in a position to appeal to the courts for redress in the absence of fraud or bad faith'—citing *Williams* v. *City of Saginaw*, 51 Mich. 120 [16 N. W. 260]; *Comstock* v. *City of Grand Rapids*, 54 Mich. 641 [20 N. W. 623]; *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls*, 60 Mich. 510 [27 N. W. 666].

"In the case of *Davies* v. *City of Saginaw*, 87 Mich. 439, 449 [49 N. W. 667], this court said:

" 'In matters involving the discretion or judgment of the common council, where no bad faith or fraud is alleged, parties cannot go behind the recorded vote to show either want of knowledge or of good judgment. * * * The resolution of the council fixing the assessment district and declaring that the sum of $8,544.97 should be assessed upon the property of that district was a legal determination, under the charter, that the benefits conferred upon that district were equal to such amount; and the spreading of the aggregate amount upon the assessment roll, and the confirmation of that roll by the council determined that the proportion of the aggregate benefit received by each parcel was equal to the burden imposed, and, in the absence of fraud, oppression, or manifest mistake, such determinations are conclusive.' "

See, also, *Beecher* v. *City of Detroit*, 92 Mich. 268 (52 N. W. 731) ; *City of Detroit* v. *Daly*, 68 Mich. 503 (37 N. W. 11).

In *Powers* v. *City of Grand Rapids*, 98 Mich. 393 (57 N. W. 250), the following language was used:

"It cannot be said that the improvement does not benefit complainant's property, and the measure of that benefit is for the council and commissioners. These officers acted within the scope of their powers, and the record contains no evidence of fraud, corrupt motive, or intentional favoritism. The presumption is that, in making the district and the assessment, the officers of the municipality acted in good faith, and have correctly and faithfully exercised the discretion reposed in them. In such case, where mistake or abuse of discretion is not manifest or demonstrable, the determination of the municipal officers in whom such discretion is vested is conclusive, and it is not reviewable by the courts. 1 Dill. Mun. Corp. § 94."

See, also, *Voigt* v. *City of Detroit*, 123 Mich. 547 (82 N. W. 253) ; *Goodrich* v. *City of Detroit*, 123 Mich. 559 (82 N. W. 255). We think the trial judge was right in refusing to set aside the assessment upon the ground of an abuse of discretion.

We have not overlooked *Lawrence* v. *City of Grand Rapids*, 166 Mich. 134 (131 N. W. 581), but that case is clearly distinguishable from this. The assessment was made not in proportion to benefits, but in proportion to area. It also appeared in that case property was not assessed that was benefited; and that the lines of the district divided lots, buildings, and houses, instead of being on the lot lines. Nothing of that sort appears in this case.

We think, in view of the testimony and these authorities, the decree must be affirmed, with costs.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.