THE STATE ex rel. BENTLEY v. REYNOLDS, Judge, et al.

**In Banc, October 25, 1905.**

1. **PRIMARY ELECTION: Count of Vote by Court: Act of 1901: Certiorari.** Section 23 of the Act of 1901 in reference to primary elections in cities of over 300,000 inhabitants, which says that "any action or neglect of the officer or members of a political convention or committee, or of any judge or clerk of primary election, or of any public officer, or board, with regard to the right of any person to participate in a primary election, convention or committee, or to register or with regard to any right given to, or duty prescribed for, any elector, political committee, political convention, officer or board by this act, shall be reviewable by the appropriate remedy of mandamus or certiorari", does not authorize the circuit court by certiorari to

State ex rel. v. Reynolds.

direct the election commissioners and judges and clerks to bring into court, after an election has been held and before a certificate of election has been issued to the successful candidate, the ballot boxes, ballots, poll books and returns in order that the count may be made by persons appointed by the court. That section does not purport to cover a case of contested election with either mandamus or certiorari, and hence neither writ is "appropriate."

2. ———: **Certiorari: Ministerial Officer.** The writ of certiorari is not the appropriate remedy to review and correct errors in the ministerial acts of ministerial officers.

3. ———: ———: **Count by Court.** The laws of Missouri do not authorize the circuit court, by use of the writ of certiorari, to turn itself into a judicial returning board, canvass the vote cast at an election, and determine who was elected or nominated at such election.

4. ———: **Contests: Power of Courts Over.** There is nothing in the primary election law of 1901 relating to cities of 300,000 inhabitants or over, that undertakes to confer on the courts authority to try and determine a primary contested election case.

## Prohibition.

Writ awarded.

*Crawley & Jamison* for relator.

The acts of judges of primary election in receiving and counting ballots are ministerial. "The writ of certiorari is appropriate only to review the judicial action of inferior courts, or public officers, or bodies exercising judicial functions. It is not available to review the action of a public officer or body which is merely legislative, executive or administrative, although it may invoke the exercise of discretion." People ex rel. v. Bush, 22 App. Div. 363; Matter of Many, 10 App. Div. 451; People ex rel. v. Austin, 20 App. Div. 1. Judges and clerks of election, under primary election law, do not exercise judicial functions and are bound to accept vote if elector makes the statutory affidavit. "The voter is judge of his own qualifications, and his conscience for the occasion takes the place of every other tribunal."

McCrary on Elections (4 Ed.), sec. 296; Spragins v. Haughton, 3 Ill. 377; Walcott v. Halcomb, 97 Mich. 361. Judges and clerks of election are ministerial officers, and are bound to accept votes of electors who subscribe to statutory oath, and must then count them. Stapleton v. Bell, 119 N. Y. 175; Sherwood v. State, 129 N. Y. 372. Certiorari brings up records and not evidence. People v. Police Board, 39 N. Y. 509. The Supreme Court has no power to issue a writ of certiorari to a board of election commissioners which is not a court in the sense of the Constitution. Carson's case, 5 S. C. 117. Members of political committees, elected under the primary election law, are public officers. People ex rel. v. Kings Co., 164 N. Y. 337. If under the primary election law of Missouri there is any remedy for the recount of the ballots, it is by mandamus to compel the judges and clerks of election to recount the ballots. Matter of Rabbit v. Garrand, 89 App. Div. 119 (construing section 11 of the primary election law of New York, which section is identical with section 23, of the primary law of Missouri). Under said law inspectors of election are public officers. Mandamus and not certiorari has always been resorted to in New York where a recount of the ballots has been had. People ex rel. v. Way, 92 App. Div. 82; People ex rel. v. Ward, 62 App. Div. 531; People ex rel. v. Board, 88 App. Div. 185; People ex rel. v. Unger, 85 App. Div. 249. The court by mandamus will compel the board of convassers to reconvene and publicly take from the ballot boxes ballots rejected as void. People ex rel. v. Ward, supra. At common law contests were tried in courts having general common law jurisdiction through the agency of *quo warranto*. People v. Pease, 30 Barb. 583. In Missouri, the law regulating contests is a code within itself. State ex rel. v. Spencer, 164 Mo. 23.

*Thos. P. Bashaw* and *P. T. Barrett* for respondent.

While there is no other case in this State where a writ of certiorari was awarded under the section relied on in this case, yet our courts have issued such writ in a number of cases of the same general nature. In the case of State ex rel. v. Moore, 84 Mo. App. 11, it was held, in a dramshop license case, that although no remonstrance was filed in the county court, tax-paying citizens who did not sign the petition for the license, should, in the sound discretion of the court, be permitted to make application for a writ of certiorari to test the legality of the license. It goes without saying that in such a case the writ would bring up the petition as a record in the case for review. So in the case at bar the ballots will be brought up for review under such writ. In State v. Dowling, 50 Mo. 134, it was held that the action of the board of appeals from the assessment of taxes may be reviewed by such writ. In State ex rel. v. Springer, 134 Mo. 212, it was held that such writ is the proper remedy to annul an increased tax assessment if made without jurisdiction. In Ward v. Board, 135 Mo. 359, it was held that an erroneous assessment may be quashed under such writ. It is plain that an assessor keeps no "records" of his proceedings, within the meaning of that term contended for in this case. And the same is true of the officials and tribunals in all of the above cases. But they have books, papers and documents which are records in legal contemplation. And so are, undoubtedly, the poll books, ballots, returns, etc., of the election in controversy records of the election commissioner's office. Relator submits that such records will show that he was fairly nominated, as will appear from a recount of the ballots, and he is entitled to such recount, if nothing more. If he is not so entitled the statute relied on is a mere nullity.

VALLIANT, J.—This controversy arose over the result of a primary election held in St. Louis, March 4, 1905, wherein Bentley, the relator, and John R. Mc-Carthey, one of the respondents herein, were rival candidates for the nomination by the Democratic party for the office of member of the House of Delegates from the 23rd ward. The election was held under the Statute of 1901 (Laws 1901, p. 149) relating to primary elections in cities of 300,000 inhabitants and over. The result of the election, according to the returns of the judges and clerks made to the election commissioners, was that Bentley was nominated, but before the election commissioners issued the certificate of election to him McCarthey filed a petition in the circuit court against the election commissioners and the judges and clerks of the election averring, in substance, that the returns were false, and that he had in fact received the majority of the votes and was entitled to the certificate of nomination.

The prayer of the petition was that "a writ of certiorari, or review according to law" issue directed to the election commissioners and the judges and clerks of the election requiring them to bring into court the ballot boxes, keys, ballots, poll books and returns, etc., to be reviewed and recounted and the judgment of the court to be rendered showing which of the two rival candidates was elected or nominated. Thereupon, after due notice to the defendant officials, the circuit court made an order requiring the election commissioners to bring into court, on a day named, the ballot boxes, keys, ballots, poll books, returns, etc., of the election judges and clerks and also made an order appointing four unofficial persons as referees to whom the ballot boxes and keys should be delivered and who were ordered by the court to open the boxes, count the ballots, observing certain directions as to detail and make report to the court of the result. Bentley was not made a party to that

suit in the circuit court, but after those proceedings he came to this court with his petition setting up in general the facts above stated with other facts of more specific detail and prayed that the circuit court be prohibited from further proceeding in that cause. On filing his petition a preliminary rule to show cause was entered, and after return the cause came on for final hearing in this court on the petition, return and motion of relator for judgment on the pleadings, and final judgment was entered on March 21, 1905, ordering that a writ of prohibition issue as prayed. As this proceeding was had so shortly before the city election to which it related, there was not time enough to write an opinion and therefore the announcement was made when the judgment was rendered that the opinion would be delivered later as the business of the court would permit.

The case involves a consideration of the primary election law of 1901 applicable to cities of over 300,000 inhabitants (Laws 1901, p. 149), particularly of section 23 of the act, which respondents think confers on the circuit court jurisdiction to do what it did in this case.

That act appears to have been, in the main, copied from a statute of New York of 1896, which has been carried into Revised Statutes of New York, 1901, volume 4, page 4331, and following. But in copying that statute our lawmakers followed the original so closely that they failed to make provision for the difference that exists between the system of election laws and the control of the courts over elections in New York and the system and control, in that respect, in Missouri. Section 9 of article 8, of our State Constitution declares that: "The trial and determination of contested elections of all public officers, whether state, judicial, municipal or local, except Governor and Lieutenant-Governor, shall be by the courts of law, or by one or more of the judges thereof. The General Assembly shall, by general law, designate the court or judge by whom the several

classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto.'' Under that mandate the General Assembly has enacted statutes designating the court or judge by whom the several classes of election contests shall be tried, and regulating the manner of trial and matters incident thereto. Those statutes, however, do not cover contests of primary elections, and unless section 23 of the act of 1901 now under discussion covers the case there is no law for the trial of a contested primary election.

That section is as follows:

''Sec. 23. *Jurisdiction of and Review by the Courts.* Any action or neglect of the officer or members of a political convention or committee, or of any judge or clerk of primary election, or of any public officer, or board, with regard to the right of any person to participate in a primary election, convention or committee, or to register, or with regard to any right given to, or duty prescribed for, any elector, political committee, political convention, officer or board, by this act, shall be reviewable by the appropriate remedy of mandamus or certiorari, as the case may require. In addition thereto, the Supreme Court of this State, or any justice thereof, or the court of appeals having jurisdiction over any city to which this act is applicable, or any judge of such court of appeals, or the circuit court of any such city, or any judge of such circuit court, shall have summary jurisdiction, upon complaint of any citizen, to review such action or neglect. Such complaint shall be heard upon such notice as the said court or justice or judge thereof shall direct. In reviewing such action or neglect, the court or justice or judge shall consider, but need not be controlled by any action or determination of the regularly constituted party authorities upon the questions arising in reference thereto, and make such decision and order as, under all the facts and circumstances of the case, justly [justice] may require. For

any of the purposes of this section, service of a writ of mandamus, certiorari, order or other process of such court, or justice or judge thereof, upon the chairman or secretary of such convention, committee or board shall be sufficient.''

It is in the first sentence of that section that the attempt is made to subject certain acts of the election officers to review, ''by the appropriate remedy of mandamus or certiorari.'' The act recognizes that the remedy afforded must be appropriate to one or the other of the writs named; it authorizes the use of either of those writs only when it is appropriate and it does not undertake to amend the law in reference to either of those writs by giving it a function it did not before possess. Therefore, when the nature of the case is such that the common-law writ of mandamus or certiorari is appropriate, the statute says it may be used, but the statute goes no further.

But section 23 does not purport to cover a case of contested election with either of those writs or to bring every action of the election officers under review; the language is: ''Any action or neglect of the officers . . . . with regard to the right of any person to participate in a primary election, convention or committee, or to register, or with regard to any right given to or duty prescribed for any elector, political committee, political convention, officer or board, by their act,'' etc. In other words, if a party has been denied the right to vote at the primary, or denied a seat in the convention, or in the committee, or denied the right to register, or any such specific right or duty given to or prescribed for him by that statute, he may have the remedy of mandamus or certiorari when it is appropriate. The next succeeding sentence, which essays to confer summary jurisdiction on certain courts and judges, is limited, also, in its scope to ''review such action or neglect,'' that is, the action or neglect already mentioned.

That is all there is in section 23 on which the claim is made of authority for the circuit court to do what it was asked to do in this case, and it falls far short of conferring such authority.

The plaintiff in the suit in the circuit court does not complain that he has been denied the right to register or to vote at the primary, or to sit in a convention, or in a committee, or to exercise any particular right that is conferred on him by the primary election statute. The substance of his complaint is that he was counted out, notwithstanding he had a majority of the votes, and his prayer is that the court recount the ballots and declare him elected. There is no authority in section 23 for that procedure, and neither mandamus nor certiorari is appropriate to such case. But, even if we should say that the Legislature intended to bring the entire election proceedings into review by the courts, the means provided by the statute are ineffectual to accomplish that purpose, because the remedy is limited to what is appropriate under a writ of mandamus or certiorari.

Section 23 of our act is almost a literal copy of section 11 of the New York act. It attempts to make the action of the election officers reviewable "by the appropriate remedy of mandamus or certiorari." That language indicates that the law-writer understood that mandamus would be appropriate in some cases and certiorari in others, but it leaves the subject without direction as to when one writ should be used and when the other; we have, therefore, to look elsewhere for the law defining the scope of those two writs.

In New York they have another statute which is found at page 390, volume 1, Revised Statutes 1901, which confers on the Supreme Court of that State (which is a court of general original jurisdiction) authority to issue a writ of mandamus to the election officers, and in the proceedings thereupon to determine

whether certain ballots were marked for the purpose of identification, and if found to be so, to order that they be excluded, and also, to determine whether certain ballots which the inspectors had rejected as void should be counted; and it was provided in that statute that the boards of canvassers or inspectors of election should continue in office pending that proceeding. Thus we see that in that State a special function is given by statute to the writ of mandamus in certain election cases, and it may be that the words "appropriate remedy of mandamus," in section 11 of the New York statute, which we have so literally copied into our section 23, had reference to this other New York statute which we have not copied and of which there is nothing like it in our books. Yet, even under the statute above referred to, giving especial office to the writ of mandamus, the New York courts do not undertake to try a contested election case, but they limit the questions to the particular points expressed in the statute. [In re Hart, 159 N. Y. 278; Kortz v. Canvassers, 30 Hun 217; People ex rel. v. Earley, 40 N. Y. Supp. 587; People ex rel. v. Canvassers, 64 How. Pr. 334.] In the case last cited it was held in a proceeding by mandamus against the commissioners to compel the canvass and certification of the vote, that the only question was whether the returns before the board were the original returns of the inspectors of election.

As to what is meant in the New York statute by the words "appropriate remedy of . . . certiorari" in that connection, our limited research into the election laws of that State does not qualify us to say. But as far as we have felt justified in investigating we have found no authority for saying that by a writ of certiorari a New York court can convert itself or its referees into a judicial returning board, canvass the vote, and decide who was elected or nominated. In People ex rel. v. Austin et al., comprising the election board, 20 App.

Div. (N. Y.) 1, it was said: "There is a further rea-
son why the writ cannot be supported, and that is in the
fact that a certiorari is available only to review a deter-
mination judicial in character. The functions of the
election board of a town in receiving votes and announc-
ing the result are not judicial. In doing that, they do
not necessarily have any discretion to exercise or any
determination to make. They receive the votes, count
them, and return the results which the figures produce.
There is no allegation in the petition of any judicial
action of the defendants, nor does anything of that char-
acter appear in their return. It cannot, therefore, be
assumed that any acts performed by them, as such
board, were other than such as may be denominated
ministerial and administrative. And, therefore, they
are not the subject of review by the writ issued herein.
[Code Civ. Proc., sec. 2120; People ex rel. Corwin v.
Walter, 68 N. Y. 403; People ex rel. Railroad Co. v.
Board Comrs., etc., 97 Id. 37; People ex rel. Trustees,
etc., v. Board of Supervisors, 131 Id. 468; In re Many,
10 App. Div. 451.] The writ of certiorari should be
quashed. All concurred."

In New York, therefore, the writ of certiorari is not
the appropriate remedy to review and correct errors,
if any, in the ministerial acts of ministerial officers. And
that is also the law of Missouri. [In re Saline County,
45 Mo. 52; Phelps County v. Bishop, 46 Mo. 68.]

The writ of certiorari in our system of jurispru-
dence brings up only the record proper of the tribunal
to which it is addressed; it does not bring up the evi-
dence on which the judgment of the trial court was
founded.

The office of a writ of certiorari is to give relief to
an injured party in a cause when the trial court has
acted without jurisdiction, or in excess of its jurisdic-
tion, or where it appears on the face of the record prop-
er that the trial court rendered a judgment which it had

no right in law to render. But the writ cannot be used as the substitute for an appeal or writ of error. [State ex rel. v. Kansas City, 89 Mo. 34; State ex rel. v. Springer, 134 Mo. 212; State ex rel. v. Shelton, 154 Mo. 670; State ex rel. v. Woodson, 161 Mo. 444; State ex rel. v. Bland, 168 Mo. 1.]

As the writ of certiorari is defined and its uses explained and circumscribed in the decisions in those cases, there is no room to contend that a court, by force of its writ of certiorari, could take the ballot boxes out of the hands of the election commissioners, turn them over to referees appointed by the court—to open the boxes, to count the votes, and to report the result, to the end that the court may pronounce judgment as to which was the successful candidate.

The learned counsel who drew the petition on which the case was founded in the circuit court seem to have realized that there was difficulty in attempting to render either a writ of mandamus or of certiorari appropriate to the case and, therefore, ignoring mandamus, the petition prays for the issuance of "a writ of certiorari or review according to law." We do not know what the counsel meant by a writ of review and they have not undertaken to explain it in their brief. What the court ordered was a writ of certiorari which was addressed to the election commissioners commanding them to send up the ballot boxes containing the ballots, the keys and the reports of the election officers. Those things are not judicial records to be reviewed under a writ of certiorari as that writ is known in this State.

But section 23 of our primary election law, after saying what may be done "by the appropriate remedy of mandamus or certiorari," goes further and says: "In addition thereto, the Supreme Court of this State, or any justice thereof, or the court of appeals having jurisdiction over any city to which this act is applicable, or any judge of such court of appeals, or the circuit court

of any such city, or any judge of such circuit court, shall have summary jurisdiction upon complaint of any citizen to review such action or neglect." What is the word "review" in that connection intended to mean? We know what is meant when it is said that an appellate court is to review the action of a court of original jurisdiction. It refers to the action of any appellate court concerning a case that is before it either on appeal, writ of error or certiorari. But there is no appeal or writ of error to bring a case from the office of the election commissioners into this court, to a court of appeals, or to a circuit court, and, as we have already seen, the writ of certiorari, as we know it in Missouri, is inappropriate to such case.

Primary elections are usually held so shortly before the general elections to which they are related that there is scarcely time for the trial of a contest with that deliberation that ought to characterize every judicial proceeding. In view of this well-known fact, which is to be taken into consideration when we are endeavoring to come to an understanding of what the General Assembly intended in passing this act, it seems improbable that in the brief space of this section 23 the intention was to provide for such a trial. No provision is made for the service of notice on the party whose election or nomination is to be contested. On the contrary, it is said: "For any of the purposes of this section, service of a writ of mandamus, certiorari, order or other process of such court, or justice or judge thereof, upon the chairman or secretary of such convention, committee or board shall be sufficient." And in point of fact in the case now before the circuit court in which the proceedings sought to be prohibited are under way, the relator here whose nomination it is sought to annul, is not made a party and therefore has no right to be heard in that case. The General Assembly never intended to authorize such a course. To deprive a man of a right

or privilege by the judgment of a court, in a suit to which he is not a party, is not in accord with due process as we understand it and it would be an unjust reflection on our General Assembly to impute to it an intention to sanction such a proceeding.

The attempt to regulate a primary election by statute is a novelty in the line of legislation, and this act shows that much is yet to be learned by experience before, if ever, such legislation can be reduced to a salutary system.

In the natural order of political events the manner of making party nominations is under the direction and control of party committees and there is where it ought to be left, holding party committees responsible for their conduct to their respective parties. When the General Assembly undertakes to put such matters in the hands of public officers and under the control of the courts it thereby proclaims distrust of the party committees and in taking it out of the hands of the party committees it relieves them of that sense of responsibility which after all is the best security for honest conduct.

In this act of 1901, which we are now discussing, the lawmakers have apparently attempted to divide the responsibility, not trusting fully either the party committees, the election officers, or the courts. The act throws on the election commissioners the responsibility of appointing the judges and clerks to hold the primary election, but requires the appointments to be made from a list of names furnished by the political committee or the candidate, thus leaving the party committee with a dominating influence, yet relieved of responsibility, and imposing on the election commissioners a responsibility without adequate authority. If this responsibility is to be imposed on the election commissioners, the election ought to be held by the official judges and clerks who are appointed by the election commissioners. By this

act, also, the same half-hearted confidence is given to the courts. When a case gets into court the act says: "In reviewing such action or neglect, the court or justice or judge shall consider, but need not be controlled by, any act or determination of the regularly constituted party authorities upon the questions arising in reference thereto." Or, in other words, the court or judge, "reviewing" the case must, before deciding it, find out what the regularly constituted party committee thinks about it and that is to have its influence in the judgment to be rendered, though not necessarily to control. That is a remarkable factor to be taken into the mind of the court in reaching a judicial conclusion. All these features of the primary election act of 1901, which we have discussed, are copied literally from the New York statute and are quite out of place in our system of elections and judicial control over them.

It is bad policy to attempt to impose party contests of this kind on the courts. It, in effect, aims to clothe the courts with powers purely political in their nature and to constitute the courts managers of the affairs of the political parties. And, besides being inappropriate, it is also inexpedient. The hasty, and summary manner in which contests of a primary election must be decided, to be of any avail, is inconsistent with the deliberate course of judicial procedure. To render a judicial trial available in such case, the General Assembly would have to make a special code of procedure, and when the General Assembly comes to consider the subject and takes into account the few days that ordinarily intervene between the primary and the general election, it would discover that the enactment of an official code of procedure in such case is an almost, if not quite, impossible task. But that thought is a matter for the future; it is sufficient for the present to say that there is nothing in the primary election law of 1901, relating to cities of 300,000 inhabitants and over, that

undertakes to confer on the courts authority to try and determine a contested primary election case, and for that reason the writ of prohibition was awarded in this case.

*Brace, C. J., Marshall, Burgess* and *Gantt, JJ.,* concur; *Fox, J.,* concurs in the result; *Lamm, J.,* dissents.