TIMOTHY P. DWYER *et al.* *vs.* BOARD OF CANVASSERS AND
   REGISTRATION OF THE CITY OF PROVIDENCE.

JULY 5, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Certiorari.   Political Ward Committees.*

Where the board of canvassers and registration found that a political caucus
   for the election of members of a political ward committee was illegal and
   void, and no person was legally elected thereat to any office, *certiorari* will
   not lie to review such finding, quash such decision, and determine the elec-
   tion of the candidates thereat, the board having full, if not final, jurisdiction
   of the question, and their proceedings being regular in form.
Whether *certiorari* in any case would lie to try the title to a public office,
   *quære.*

CERTIORARI.   Heard on petition for writ, and dismissed.

BLODGETT, J.   Substantially the same questions are raised
and sought to be determined in this petition for a writ of *cer-
tiorari* as were sought to be determined when the *quo warranto*
proceedings in *Greenough, Atty. Gen.* v. *Lucey et al.,* 28 R. I.
230, were before the court.  Both the present proceeding and
the former one assert that the petitioners were duly elected as
members of the first ward democratic city committee of the
city of Providence, on September 27, 1906, and seek a reversal
of the decision of the board of canvassers and registration of
said city,—that the caucus held on that day was illegal and
void, with the consequent result that certain persons by reason
thereof are holdover members of said committee.

(1)   The case presented is not a case which justifies the interpo-
sition of the court in this form of proceeding.

The finding of the board of canvassers and registration
was "that said caucus was illegal and void, and that no person
was legally elected thereat to any office or nomination."   The
prayer of the petition for this writ of *certiorari* is "that the pro-
ceedings of said board therein may be reviewed, and that the
decision of said board so far as it declares said caucus illegal,
may be quashed, and the vote of said caucus electing petitioners

to said office of said committee may be carried out, and that petitioners have such other and further relief as the circumstances require."

Were the prayer of the petition to be granted it would require the court not merely to hold that the caucus in question was a legal and valid caucus, but to decide which set of two opposing sets of candidates was elected thereat, and that, too, in a proceeding to which neither the present holdover members of said committee nor the candidates in opposition to the petitioners at said caucus are or can properly be made parties, or be served with process, and in which no judgment of ouster could be entered. This obviously involves a hearing of the case upon its merits and upon evidence. More than this, it is legally possible that, even were it a legal and valid caucus, there might still be no election by reason of a tie vote for opposing candidates. The case is different from that which would be presented had the decision below affirmed the validity of the action of the caucus, and the writ were sought to obtain a decision here that the caucus was invalid, in which case it is apparent that the determination that the caucus was illegal and quashing the decision below *ipso facto* would determine that there was no election thereat.

In *Smith* v. *Burrillville Town Council*, 19 R. I. 61, 63, it was said, by Tillinghast, J.: "And we are of the opinion that as *certiorari* does not serve the purpose of an appeal or bill of exceptions, and does not involve the investigation of facts, not appearing upon the record, unless they are jurisdictional, the proper practice is not to send up the evidence adduced before the inferior tribunal. . . . If it is desired to enlarge the scope of the common-law proceedings so as to make it serve the purposes of a bill of exceptions or of a petition for a new trial, and thereby confer upon this court jurisdiction to correct errors of law and also to review findings of fact, thus necessitating the sending up of the evidence, it is of course competent for the General Assembly to provide therefor by statute, as has already been done in many of our sister States. This would secure uniformity of practice and prevent the possibility of any such arbitrary proceedings on the part of inferior tribunals.

as are suggested by counsel for the petitioner. But until some such statute shall have been enacted we must limit the proceeding to its common-law functions."

And in *Commonwealth* v. *Ramsay*, 166 Pa. St. 642, it was said by the Supreme Court of Pennsylvania: "This is a *certiorari* and it brings up for review nothing but the record. . . . We might be unable to see in some of these cases why, upon the facts he has stated, one vote was held to be legal and another to be illegal, if an appeal had been given in this class of cases, and we were required to review them on their merits. But an appeal is not given. The merits are not before us. Upon this writ it is our duty to see that the successive steps taken in the investigation are in accordance with the statute that has prescribed them, but with the conclusions of the court below or its reasons for adopting them we have no concern. . . . But in proceedings like that before us that are creatures of a statute, and are provided for a specific purpose, we must look to the statute for the extent to which the judgment is reviewable. In this case no form of review is provided. Our supervisory control is that only which may be exercised in *certiorari;* and that does not extend to a review of the questions decided."

In the recent case of *State* v. *Reynolds*, 190 Mo. 578 (1905), the Missouri statute provided as follows: "Sec. 23. Any action or neglect of the officer or members of a political convention or committee, or of any judge or clerk of primary election, or of any public officer, or board, with regard to the right of any person to participate in a primary election, convention or committee, or to register, or with regard to any right given to, or duty prescribed for, any elector, political committee, political convention, officer or board, by this act, shall be reviewable by the appropriate remedy of mandamus or certiorari as the case may require." The controversy was over a nomination at a primary election for member of the House of Delegates, and the court says, p. 586: "The substance of his complaint is that he was counted out, notwithstanding he had a majority of the votes, and his prayer is that the court recount the ballots and declare him elected. There is no au-

thority in section 23 for that procedure, and neither mandamus nor certiorari is appropriate to such case. But, even if we should say that the Legislature intended to bring the entire election proceedings into review by the courts, the means provided by the statute are ineffectual to accomplish that purpose, because the remedy is limited to what is appropriate under a writ of mandamus or certiorari," adding later, " The attempt to regulate a primary election by statute is a novelty in the line of legislation, and this act shows that much is yet to be learned by experience before, if ever, such legislation can be reduced to a salutary system." . . . It is bad policy to attempt to impose party contests of this kind ·on the courts. It, in effect, aims to clothe the courts with powers purely political in their nature, and to constitute the courts managers of the affairs of the political parties. And, besides being inappropriate, it is also inexpedient."

A similar view was expressed by Stiness, C. J., in *Cannon* v. *Board of Canvassers*, 24 R. I. 473, which was a petition for a writ of *mandamus* to require the issuing of certificates of nomination to the petitioners as candidates for alderman and common councilmen, the board having found " that no valid nominations had been made. . . . This was within their province to find, and their judgment is final. The statute was not intended to make this court a supreme board of canvassers. . . . Suppose that we might have held a different opinion as to rejecting the twenty-five ballots without evidence, for example; we are not ·the tribunal to pass upon that question, and therefore it is not for us to say whether we think their judgment was right or wrong."

The board had full jurisdiction, if not final jurisdiction (*Atty. Gen.* v. *Drohan et al.*, 169 Mass. 534), of the question before them, and their proceedings were regular in form. If they erred in requiring more evidence than was necessary to convince them of the election of the petitioners, *certiorari* does not lie to correct such an error. Indeed, the case presented does not appeal even to our judicial discretion, since it does not appear that any steps have been taken to punish those who were guilty of suppressing the evidence which should have been presented to the

board.   Whether *certiorari* in any case would lie to try the title to a public ôffice it is not now necessary to determine, inasmuch as it was determined in *Atty. Gen.* v. *Lucey, supra,* that membership in a political committee is not a public office. So that in strictness of speech no public question is here involved, but rather a question as to who are the representatives of a subdivision of a local organization of a voluntary association of fluctuating membership called a political party, whose members may aggregate at any given time only two out of every one hundred voters in the community, and that question is sought to be determined, moreover, upon evidence in *certiorari* proceedings.

The petition for the writ is denied and dismissed.

*John Doran, and James H. Thurston,* for petitioners.
*Albert A. Baker,* City Solicitor, for respondents.