STATE EX REL. FIRST NATIONAL BANK OF MOLT, APPELLANT, *v.* HEATH ET AL., RESPONDENTS.

(No. 4,671.)

(Submitted September 27, 1920. Decided October 4, 1920.)

[192 Pac. 1108.]

*Prohibition—Drains—Board of Review—Appeal—Jurisdiction.*

Drains—Board of Review—Jurisdiction on Appeal—Prohibition.
   1. A drainage district was duly organized under the provisions of Chapter 147 of the Laws of 1915. No effort was made by *certiorari* or otherwise to review the action of the drain commissioner in establishing the district. Contracts were let and

warrants issued to a large amount. As organized, the district embraced 231,563 acres. One party interested (a county) appealed from the final order of the commissioner. A board of review was appointed, which thereupon reviewed all of the acts and decisions of the commissioner and made its final report excluding from the district about 225,000 acres, leaving approximately 6,000 acres in it. *Held,* on appeal from a judgment quashing an alternative writ of prohibition, that the board was without authority to hear and determine the legality of all of the acts and decisions of the commissioner not appealed from and to make the exclusion it did, but was limited in its review to the one matter properly before it—the appeal of the county.

[As to drainage districts, see note in **Ann. Cas.** 1915C, 9.]

Same—"Review" on Appeal—Definition.
2. The term "review" as used in the Drainage Act (Chap. 147, Laws of 1915) giving the reviewing board power to review all assessments and correct errors therein, *etc.,* means review on appeal taken as provided by the Act, by a party deeming himself aggrieved.

*Appeal from District Court, Stillwater County; A. P. Stark, Judge.*

Original application for writ of prohibition by the State, on the relation of the First National Bank of Molt, against Warren Heath and others, as the Board of Review for Big Lake Drainage District No. 1, Stillwater County, and H. M. Ray, as Drain Commissioner of said County. From a judgment quashing an alternative writ, relator appeals. Reversed.

*Messrs. Collins, Campbell & Wood,* for Appellant, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

Chapter 147, Laws of 1915, is practically identical with the drainage law of Michigan, as contained in Howell's Annotated Statutes, second edition, sections 3376 *et seq.* In *Whiteford* v. *Probate Judge,* 53 Mich. 130, 18 N. W. 593, the court in a drainage matter holds: "The proceedings are all statutory, not according to the course of the common law, and must strictly conform to the statutes authorizing them. Every material requirement of the statute must be observed, and the proceedings must show on their face a substantial compliance with the law." In *Gillett* v. *McLaughlin,* 69 Mich. 547, 37 N. W. 551, the court strictly construes the appeal right given

to aggrieved persons under the drainage law, and holds, in effect, that the appellate body cannot act outside of the express power given to it in the statute.

We may, therefore, with propriety conclude that the powers of the board of review must be strictly construed, that it can take nothing by intendment, nor act at all except where specifically authorized in the premises; and this being the case, we find, under the record herein, no authority whatever in the board of review, upon the appeal of Stillwater county involving only the assessment of its highways, to exclude any other property whatsoever from the district or to cancel any other assessments. The power to so act is not to be found in the language of the statute, for the exclusion of other land, and the cancellation of other assessments has not been made the subject "matter of appeal." No appeal with respect to such matter having been taken, other property owners are concluded by the adjudication of the drain commissioner, and the board is without right, power, authority or jurisdiction to set the adjudication aside, as it threatens to do.

It should be borne in mind that in connection with the powers of the board of review under the Drainage Act, the statute in every instance limits the powers of the board to a "review" alone. The word "review" as used in connection with appellate procedure generally is defined to mean review on appeal "for that is the only method whereby a review may be had." (7 Words & Phrases, 6214, 6215.) In other words, before an appellate board or court can review any matter whatsoever there must be an appeal involving that matter. (*First Nat. Bank of Helena* v. *McAndrews,* 5 Mont. 251, 5 Pac. 279; *City of Indianapolis* v. *Hawkins,* 180 Ind. 382, 103 N. E. 10.) The statute does not authorize the board, either in express language or by any implication, to retry any matter, and certainly not to retry all adjudicated matters in the drainage district. It has reviewing powers only.

Apart from the above, it is a settled rule of appellate procedure generally that the rights of persons who are not parties

to an appeal cannot be considered upon the appeal. (3 Cyc. 411; 4 Corpus Juris, 1102 *et seq.*)

No appeal having been taken to the board involving the question of the general exclusion of territory proposed now by the board and the annulment of assessments, it did not acquire jurisdiction to pass upon these matters. (*Washoe Copper Co.* v. *Hickey,* 23 Mont. 319, 58 Pac. 866; *Featherman* v. *Granite County,* 28 Mont. 462, 72 Pac. 972; *Baacke* v. *Dredla,* 57 Neb. 92, 77 N. W. 341; *Horner* v. *Biggam,* 36 Mich. 243.)

In *Erickson* v. *Cass County,* 11 N. D. 494, 92 N. W. 841, the court, with citation of authorities, determines that in the class of cases here under consideration the action of an official, like the drain commissioner, is not open to collateral attack, but becomes a final adjudication if not corrected by some of the modes pointed out by statute. (*Smith* v. *Carlow,* 114 Mich. 67, 72 N. W. 22; *Troost* v. *Fellows,* 169 Mich. 66, 134 N. W. 1011; *Oliver* v. *Monona County,* 117 Iowa, 43, 90 N. W. 510.)

If it is contended by the respondents that the board of review has the power to cancel assessments, and to omit territory, in connection with the correction of error or inequality in the assessment against Stillwater county, under the first portion of section 4, Article IV, of the drainage district law, that contention cannot be sustained under decision of the Michigan court upon an identical statute. We refer to the case of *Thomas* v. *Walker Township Board,* 116 Mich. 597, 74 N. W. 1048.

Prohibition is the proper remedy. (32 Cyc. 605, 607; *Glide* v. *Superior Court,* 147 Cal. 21, 81 Pac. 225, 227; *People* v. *District Court,* 26 Colo. 386, 46 L. R. A. 850, 58 Pac. 604.) If it is suggested that an appeal lies from the action of the board, so that prohibition is not a proper remedy, there being in such event an adequate remedy at law, we concede that section 4, Article IV, of the Act provides: "The action and decision of said board [meaning the board of review] shall be

final except in case of an appeal therefrom.'' Nothing further with respect to an appeal from the action of the board will be found in the statute, and we can conjecture only in whom any alleged appeal right is vested, within what time it shall be exercised, how and when it shall be taken, and what tribunal, court, body or person will entertain the appeal if an attempt is made to take one. It is manifest that if the legislature intended to give the right of appeal, it did not carry out its intention in the premises, for the statute is utterly inadequate and incomplete on the subject, and does not in terms confer any appeal right whatsoever. But this court has announced the rule which here applies. In *In re Searles,* 46 Mont. 322, 127 Pac. 902, it is said: ''If the appeal is not specifically provided for, review by it cannot be had.'' (3 Corpus Juris, par. 133; *State ex rel. Cohn* v. *District Court,* 38 Mont. 119, 99 Pac. 139.) Under the rule of the last-cited case, we contend that this court has no power to supply deficiencies in Chapter 147, and point out when, to whom, or in what manner, an appeal from the action of the board shall be taken, for this is within the province of the legislature alone, and the legislature has not acted.

*Messrs. Gunn, Rasch & Hall* and *Mr. M. L. Parcells,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

It is first argued for appellant that as the only appeal taken was by Stillwater county alone, the board of review is without jurisdiction to omit or exclude any lands in which Stillwater county is not interested, and is confined to a review of the assessment against said county.

According to section 2, Article IV, of the Drainage Act, the appeal is taken by making an application to the district court of the proper county for the appointment of a board of review, and ''by serving upon the drain commissioner, and filing with said district court, a notice to that effect, and by filing also a bond with such court,'' *etc.* As the law expressly

declares that "Only one application for a board of review shall be entertained by such district court for any drain," it necessarily follows that there can be but one appeal. When, therefore, an application has been made for the appointment of a board of review, it would be useless for anyone to attempt to appeal, because his application would not be entertained. If, then, the argument for appellant that the board is confined to a consideration of the assessment against the land or property of the party appealing is sound, then, of course, where one party takes an appeal before the others have had an opportunity to do so, he thereby deprives such others of a right to have their assessments reviewed, and makes the decision and determination of the drain commissioner final and conclusive as to them. This, of course, would be not only unreasonable, but absurd. Furthermore, such a construction would render the statute unconstitutional.

There is no requirement that any number of owners should join in an application for a board of review; but, on the contrary, it is expressly declared that a single owner or a single county may appeal. When, therefore, Stillwater county took an appeal by making an application for the appointment of a board, the appeal was necessarily in behalf of all parties against whom assessments had been made, and was of the same effect as though all parties had joined in making the application. But however this may be, the authority and jurisdiction of the board of review is not measured by the number of parties aggrieved who joined in the application for the appointment of a board, and the powers of the board are the same whether the application for the appointment of the board is made by one party, or by several. The law clearly contemplates and provides that where a board of review is appointed, the board shall not be bound by the action of the drain commissioner in making an apportionment of the cost as provided in section 1 of Article IV, but shall proceed to make the apportionment and assessments the same as though the drain commissioner had not taken any action

in the matter. In other words, the matter of assessment is for determination *de novo* by the board of review. This is manifest from the provision of section 1 of Article IV, authorizing an appeal from the "apportionment of the per cent of the cost of construction made by the drain commissioner," and by the provision of section 3, declaring that "the board of review shall have the right and it shall be its duty to review all assessments made by the county commissioner on such drain." These provisions clearly show that "the matter of appeal" mentioned in section 4 is the apportionment of the cost and the assessment made by the drain commissioner.

While the Montana law was undoubtedly copied largely from the Michigan statute on the subject, there is no provision of the Michigan law authorizing the board of review to omit or exclude lands assessed by the drain commissioner. The Michigan statute, however, authorizes the board to correct errors and inequalities in the assessment the same as the statute in this state, and in the case of *Murphy* v. *Dobben,* 137 Mich. 565, 100 N. W. 891, where an appeal was taken by but one party, the board of review reduced the assessments against sixty parcels of land, increased the assessments against sixteen parcels, and added several tracts of land to the district. The court in the opinion said: "The order of the board of review was within its powers, and its proceedings were apparently regular, unless it be in relation to the matter of notice to the persons whose lands were added." We therefore submit that notwithstanding the board of review was appointed upon the application of Stillwater county alone, the board can rightly exercise the powers conferred, and is required to perform the duties imposed by section 4 of Article IV, of the Act.

By virtue of the powers conferred by said section 4, the board may (1) change the assessments made by the drain commissioner as it may deem just and equitable, when, in its judgment, there is manifest error or inequality in said assessments; (2) omit or exclude lands included in the district by

the drain commissioner, and may add lands excluded by the drain commissioner when, in the judgment of the board, according to the provisions of section 1 of Article IV, the lands omitted should not have been included and assessed, and the lands added should have been included and assessed.

In view of the power to omit or exclude lands conferred upon the board in such plain and. unambiguous language, it is idle to contend that such power does not exist.

In the brief for appellant, the case of *Thomas* v. *Walker Township Board,* 116 Mich. 597, 74 N. W. 1048, is cited. The Michigan statute does not authorize the board of review to omit or exclude any land or property from the district as created by the drain commissioner. The section of the Michigan statute defining the powers of the board is quoted in the opinion.as follows: "Section 5 provides that the board shall proceed to view the grounds, to review the assessments made by the commissioner, to hear the proofs and allegations of all parties in respect to the matter of such. appeals, and if in their judgment there be manifest error or inequality in such assessment, they may order such changes to be made as they may deem just and equitable."

After the decision in the case of *Thomas* v. *Walker Township Board,* and in 1899, the Michigan statute was amended by conferring upon the board authority to add lands to the district. The amendment, however, does not confer power to exclude any lands from the district. (See section 3405 of Howell's Michigan Statutes (second edition).)

It is further argued that where the drain commissioner has included in the district and made assessments against land only within the classes of land described in said section 1 of Article IV, his action cannot be reviewed, and the board is without authority to eliminate any lands from the district. It is argued that if lands are within the "watershed of the drain," and have been included by the drain commissioner in the district, his action is final and conclusive. This argument overlooks entirely the fundamental principle of law

that there cannot be an assessment without some benefit, and this is recognized by the very language of the section by which the benefits accruing to any land or property are to be considered in making the assessments. To construe the statute as requiring the assessment to be made for the cost of construction of a drain without reference to the benefits accruing to the lands assessed, would render the statute unconstitutional as operating to take property without due process of law.

The legislative assembly has not assumed to fix the boundaries of a drainage district or to designate the lands to be assessed, but has merely declared that in apportioning the cost and in making the assessments, certain principles stated in section 1 of Article IV shall be regarded. The apportionment of the cost and the making of the assessment must be confined to the lands described in said section 1, but what lands so described will be benefited, and should be assessed, is left in the first instance to the judgment and discretion of the drain commissioner, and upon an appeal being taken to the judgment and discretion of the board of review. The drain commissioner occupies a position similar to that of a county assessor, and the board of review is somewhat analogous to a county board of equalization. (See *Zinser* v. *Board of Supervisors,* 137 Iowa, 660, 114 N. W. 51.)

In view of section 7227, Revised Codes, declaring when prohibition may issue, the only question for determination is whether the board of review has jurisdiction to omit lands and annul the assessments thereon. Whether the lands which the board proposes to eliminate from the district should be eliminated is a matter confided by the law to the judgment' and discretion of the board. As the proposed action of the board is within its jurisdiction, and in the exercise of power expressly conferred by the statute, no inquiry can be made in this proceeding with reference to the proper exercise of its judgment and discretion. (*State ex rel. Boston & M. etc. Co.* v. *Second Judicial District Court,* 22 Mont. 220, 56 Pac.

219; *State ex rel. Heinze v. District Court,* 32 Mont. 394, 80 Pac. 673.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment quashing alternative writ of prohibition. On April 7, 1920, the relator filed in the district court of the county of Stillwater its duly verified petition for a writ of prohibition. The return to the alternative writ joins issue solely on questions of law, and under it all matters properly pleaded in the petition are admitted.

From the petition it appears that the "Big Lake drainage district No. 1" was duly organized under the provisions of Chapter 147, Laws of 1915, that the statute was complied with in the subsequent steps taken, and that, after the drain commissioner made his final order determining the boundaries of the district and describing the lands and other property embraced therein, he filed said order with the county clerk, and gave the notices required by the provisions of said chapter. No effort was made by *certiorari,* within the time provided in the statute, or at all, to review the action of the commissioner in establishing the district, nor was any effort made by any land owner to delay or prevent the making of contracts for the construction of the drain. The contracts were let, and warrants issued aggregating approximately $31,000, of which the relator here holds approximately $11,000 worth. The district, as organized, embraced 231,563 acres of land, and, as alleged in the petition, relator became the owner of the warrants under the belief that such land would be assessed for the construction of the work for which the warrants had been issued, and without knowledge of any threatened action to exclude from said district any part of said land.

In determining the property to be benefited by the drain, and consequently subject to assessment for the work, the drain commissioner in his final report and order declared: " * * * The county of Stillwater, Montana, for benefits or improve-

ments by reason of drainage of approximately twelve miles of established county roads, located within said district, which said county is benefited thereby in the sum of approximately $1,000 by reason of said improvement.''

Proceeding under section 2 of Article IV of the Act, the county of Stillwater thereupon, and within the time provided by said section, appealed from the final order of the commissioner, and, in conformity with the provisions of the Act, made application to the district court for the appointment of a board of review, and perfected its appeal by the filing of the bond required by the section. It is conceded that the county of Stillwater was the only party affected who appealed in the manner provided by the statute, or at all. Upon the perfecting of its appeal and the making of its application, the district court appointed the respondent board in the manner prescribed. The board thus legally constituted proceeded to canvass and review apparently all of the acts and decisions of the drain commissioner. As to certain lands, protests and claims of exemption from taxation were filed with the board of review, although the time for appeal had long since expired, and apparently, as to other tracts, the board proceeded to review the action of the commissioner without complaint or protest filed. Having concluded their hearings, the board announced its purpose to file its final report striking from and excluding from the district aproximately 225,000 acres of the land included in the district. In the application for the alternative writ in the lower court it is alleged that the board of review threatens to, and will unless restrained by the court, file said report and exclude from the district said 225,000 acres, leaving approximately 6,000 acres of land in the district. This is admitted by the return to the writ and in argument.

The only question thus presented is that of the authority [1] or jurisdiction of the board of review thus created, on the application of a single appellant, to hear and determine the legality of all assessments made and the inclusion of all

lands in the district by the final order of the drain commissioner.

Counsel for the respondent board contend that, under the peculiar wording of the provisions concerning appeal, and particularly the closing paragraph of section 2, Article IV, of the Act, to-wit, "Only one application for a board of review shall be entertained by such district court for any one drain," there can be but one appeal, and that such an appeal brings before the board the question of the legality and propriety of every act and all orders of the drain commissioner.

Chapter 147 of the Laws of 1915 provides for the establishment of drain districts and the construction of drains for the improvement of agricultural lands and the protection of the public health, convenience or welfare.

Article I thereof provides for the appointment of a county drain commissioner by any county of the state desiring to take advantage of the provisions of the Act, and defines the powers and duties of such commissioner.

Article II provides for the establishment of a drain district on application, in writing, describing the boundaries, *etc.*, of the drain and signed by not less than ten freeholders, at least five of whom must be owners of land liable to assessment for benefits in the construction of such drain; said petitioners being jointly and severally liable for the preliminary cost and expenses of determination and survey of the proposed drain. The article then provides for the establishment of the district, the survey of the drain, acquisition of right of way, *etc.*, and the order of establishment by the drain commissioner.

Article III provides that upon the release of the right of way the commissioner shall make his final order of determination and shall therein describe the boundaries and the lands embraced in the district, and shall file the same with the county clerk, prepare specifications for the work to be done, and give ten days' notice of the time and place of letting contracts for the work, which notice shall, among other things, describe the several tracts of land included and the manner

in which the funds for the construction of the drain shall be raised, giving the number of annual assessments, and that "The apportionment of the assessment  *  *  *  will be subject to review ten days after the day that the contract for the construction of the drain is let or awarded." Article III also provides: "This assessment sheet shall be subject to review as hereinbefore stated ten days after the day of letting the contract."

Article IV, section 1, then provides that, before the day of review, the commissioner shall apportion the per cent of the cost of construction which each tract of land, railroad, city, town, county or irrigation ditch shall bear, and provides the method of apportionment.

Section 2 of Article IV provides as follows: "The owner of any land, ditch or railway assessed for the construction of any drain, who may conceive himself aggrieved by the assessment made by the county drain commissioner, may, within ten days after the day of review provided for in the preceding Article of this Act, appeal therefrom and for such purpose make an application to the district court of the proper county for the appointment of a board of review as hereinafter provided, by serving upon the drain commissioner and by filing with said district court a notice to that effect, and by filing also a bond with such court in the sum of two hundred dollars with one or more sureties to be approved by the clerk of said district court conditioned upon the payment of all costs in case the assessment made by the county drain commissioner shall be sustained. Any county, incorporated city or town assessed a per cent of the cost of the construction of any drain that may conceive itself or themselves aggrieved by the assessment made by the county drain commissioner, may, within ten days after the date of review provided for in the preceding section, appeal therefrom as herein provided. Only one application for a board of review shall be entertained by such district court for any one drain."

Section 3 of the Article provides the manner in which the board shall be appointed, the fixing of the day of hearing, and the qualification of members of the board, and provides for a review of the proceedings establishing such drain by *certiorari*.

It is then provided by section 4 of said Article, as follows: "The board of review shall proceed at the time and place specified in the notice to hear the proofs, and allegations of all the parties in respect to the matter of appeal and shall thereupon proceed to view the lands benefited by such drain and the drainage area, and review all the assessments made by the county drain commissioner on such drain, and if in its judgment there be manifest error or inequality in such assessment, it shall order and make such changes therein as it may deem just and equitable. Should the board of review find upon personal examination that any land, railway, irrigation ditch, city or town, or any portion thereof, has been included in the drain district and assessed, which is not liable to assessment in accordance with the provisions of section 1 of this Article, then said board of review shall omit such land, railway, irrigation ditch, city or town, or such portion thereof, from such drain district and annul the assessment against it or such portion of it. Should the board of review find upon personal examination that there is any tract of land, railway, irrigation ditch, city or town, or any portion thereof, liable to assessment for the construction of the drain in accordance with the provisions of section 1 of this Article, which has not been assessed, it shall add such land or portion thereof to the drain district, and apportion the per cent of the cost to such."

While the language in which these two sections on appeal is couched may be somewhat obscure, in our opinion the purport of these provisions and the intention of the legislature are clear. The manner of perfecting an appeal from the order of the drain commissioner is analogous to that provided for an appeal from the justice court to the district court. Notice of appeal is filed with the commissioner and with the

district court, and the appeal is perfected by the filing of a bond in the sum of $200 for the payment of costs *"in case the assessment made by the county drain commissioner shall be sustained."* The appeal being taken, not to the district court, but to a special tribunal to be created under the provisions of the Act, for each special district, it is further provided by the Act that *for that purpose* (the appeal) an application shall be made to the district court for the appointment of a board of review. The application is not a part of the' appeal, but made for the purpose of providing the necessary machinery for disposing of the appeal. With this distinction in mind, it is clear that the closing paragraph of the section that "only one application for a board of review shall be entertained by such district court for any one drain" has no reference to the number of appeals which may be taken from the action of the drain commissioner. As declared by the section: "The owner of any land, ditch or railway  *  *  * who may conceive himself aggrieved by the assessment made by the  *  *  *  drain commissioner, may  *  *  *  appeal therefrom," and "any county, incorporated city or town assessed a per cent of the cost of the construction of any drain that may conceive itself  *  *  *  aggrieved  *  *  *  may  *  *  *  appeal therefrom as herein provided."

By section 4, Article IV, the board of review so appointed on the application of a party who conceives himself aggrieved is given authority to hear and determine all matters connected with the action of the commissioner and from his orders in which an appeal lies, and therefore, to avoid the expense and confusion attendant upon the sitting of numerous boards of review at practically the same time, in the same district, and for the same purpose, the legislature wisely provided that no matter how many parties conceiving themselves aggrieved should appeal and call upon the court to provide for a hearing of their appeals, only one application for the appointment of a board of review should be entertained, and that such board should hear and determine all appeals perfected in

accordance with the provisions of the Act. That such was the clear intention of the legislature is manifest by the opening provision of section 4 of Article IV, that "The board of review shall proceed at the time and place specified in the notice to hear *the proofs and allegations of all the parties in respect to the matter of appeal.*"

It is inconceivable to us that the legislature could have intended that, as contended by counsel for the respondents, on the creation of a large drain district, where all the parties affected thereby, with a single exception, were satisfied with the action of the commissioner and the assessments made, a single person, "conceiving himself aggrieved" as to an unimportant tract of land within the district, could appeal, and thereby throw open the door, closed by the limitation expressed in the Act, and permit the board to review every act and every finding of the commissioner, and to exclude more than ninety-seven per cent of the property assessed for the construction of the work, and thus not only defeat the purpose of the petitioners, but render absolutely worthless the warrants issued for work done in strict compliance with the law and in reliance upon the act of the owners of such land in failing to make timely objection to the inclusion of their lands within the district.

True, the Act provides that the board of review shall have [2] power to review all assessments and correct manifest errors therein, and to exclude land improperly included, as well as to include lands improperly excluded; but such provisions mean no more than that the board has authority to so act in all matters properly before it for *review.* The use of the word "review" throughout the Act is significant, and the statute is plain that the reviewing board is to act only in the "matter of appeal." The word "review" has a well-understood meaning in the law. In 7 Words and Phrases, page 6214, it is said, quoting from *Weehawken Wharf Co.* v. *Knickerbocker Coal Co.,* 25 Misc. Rep. 309, 54 N. Y. Supp. 566: "'Review,' as used in connection with appellate proce-

dure generally, is defined to mean review on appeal, for that
is the only method whereby a *review* may be had." "The
word 'review,' when applied to the review by an appellate
court of the action of a court of original jurisdiction, has
reference to cases which are before the appellate court either
on appeal, writ of error or *certiorari.*" (*Bentley* v. *Reynolds,*
190 Mo. 578, 89 S. W. 877.) In this sense the term is used
by this court in the case of *First Nat. Bank* v. *McAndrews,*
5 Mont. 251, 5 Pac. 279: "This is an appellate court, and has
jurisdiction to *review* the decisions of the lower court."

In 3 Cyc. 411, it is stated that "It is the general rule that
only the rights of parties before the court can be adjudicated
on appeal, and the rights of persons who are not parties to
the appeal cannot ordinarily be considered." To the same
effect is the rule announced in 4 Corpus Juris, page 1112,
and again in 15 Corpus Juris, paragraph 93, "Courts," the
rule is stated that "A court cannot of its own motion assume
jurisdiction in a particular matter; it is necessary that some
person should in some legal way invoke its action."

It is suggested by appellant that our statute was adopted
almost bodily from Michigan, and that therefore the decision
of the Michigan court in *Thomas* v. *Walker Township Board,*
116 Mich. 597, 74 N. W. 1048, to the effect that the board
of review is without power to exclude lands which, in its judg-
ment, are not benefited, is applicable; but, as pointed out by
counsel for respondents, the Michigan statute, at the time of
that decision, had no such provision as is contained in our
statute, and an amendment was therefore made conferring
on such board authority to add lands to the district, but the
amendment does not confer power to exclude lands. (Sec.
3405, How. Mich. Stats.) The case cited is therefore of little
avail here. However, the provisions for an appeal from the
action of the drain commissioner, under the Michigan statute
are identical with ours, and in the case of *Smith* v. *Carlow,*
114 Mich. 67, 72 N. W. 22, an action for the recovery of taxes
paid under protest, the court says: "Plaintiff introduced evi-

dence tending to show that his land was so remote that it was not benefited by the drain. That question could not be raised in a collateral proceeding. The statute provides a way for reviewing the action of the commissioner in this regard, and this action is final. (3 How. Stats., secs. 1740d8, 1740e2; *Brown* v. *City of Grand Rapids*, 83 Mich. 101, 47 N. W. 117; *Township of Caledonia* v. *Rose*, 94 Mich. 216, 53 N. W. 927; *Nelson* v. *City of Saginaw*, 106 Mich. 659, 64 N. W. 499.)''

In *Washoe Copper Co.* v. *Hickey*, 23 Mont. 319, 58 Pac. 866, this court said: ''The statute providing for appeals must be strictly complied with. A failure on the part of the appellant in this regard leaves this court without jurisdiction to entertain the appeal.''

The final action of the drain commissioner is an adjudication of the matters therein passed upon, and is, to the same extent as an adjudication by a court, conclusive, whatever errors of judgment may have been committed, in the absence of timely application for a review of his acts by some one of the modes prescribed by the statute. (*Troost* v. *Fellows*, 169 Mich. 66, 134 N. W. 1011; *Erickson* v. *Cass County*, 11 N. D. 494, 92 N. W. 841; *Oliver* v. *Monona County*, 117 Iowa, 43, 90 N. W. 510.)

As constituted by our Act, the board of review is essentially an appellate board or tribunal, established on proper application by the district court to hear and determine all matters properly brought before it in the manner prescribed. Any person interested ''who may conceive himself aggrieved'' may appeal from the action of the commissioner to this single tribunal established by the court; but each party thus conceiving himself aggrieved must appeal from the action of the commissioner, for on a hearing before the board of review, ''the board of review shall proceed at the time and place specified to hear the proofs and allegations of all the parties *in respect to the matter of appeal*''; in other words, the board has all of the power enumerated in the statute, when those matters are properly before it on appeal taken by par-

ties conceiving themselves aggrieved, and not otherwise. Clearly, then, the board of review ·is without jurisdiction or authority to hear and determine any matter other than that before it on appeal, to-wit, the assessment against Stillwater county, and is without jurisdiction to make the order of exclusion of territory which it will, it is conceded, make unless the writ prayed for shall issue.

The judgment of the district court is reversed, with direction to the court to issue its writ of prohibition as prayed for in the petition.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.

(Submitted September 27, 1920. Decided October 4, 1920.)