STATE, *ex rel.* EAST COAST LUMBER & SUPPLY COMPANY, v. J. M. LEE, as Comptroller.

172 So. 722.
Opinion Filed February 16, 1937.

*Thomas B. Adams,* for Relator.

*Cary D. Landis,* Attorney General, *H. E. Carter, W. P. Allen,* Assistant Attorneys General, and *J. Velma Keen,* all for Respondents.

WHITFIELD, P. J.—The alternative writ of mandamus herein issued by this court against the State Comptroller as respondent, alleges that the relator, the East Coast Lumber & Supply Company, owns and operates ten lumber yards in this State; that the character of the business done by relator in said lumber yards is a retail and wholesale lumber business, that relator's retail lumber business, together with the retail sale of other building materials made at and in said lumber yards, was on December 1, 1936, held by the Supreme Court of Florida to be subject to Chapter 16848, Laws of Florida, 1935; that relator has since June 25, 1935, and until December 1, 1936, been contesting and litigating the constitutionality of said Chapter 16848, Laws of Florida, 1935, in stated suits·and proceedings.

It appears that the constitutionality of Chapter 16848, in so far as it imposes a flat tax per annum per store and a tax of one-half of one per cent upon gross receipts of each store, was adjudicated by the Supreme Court of Florida on November 26, 1935, and on rehearing, February 25, 1936; State, *ex rel.* Lane Drug Stores, Inc., v. Simpson, 122 Fla. 582, 639, 166 So. 227, 249. The applicability of said provisions of Chapter 16848 to stores like the relator's was adjudicated by the Supreme Court of Florida, December 1, 1936, Mason Lumber Co. v. Lee, 126 Fla. 371, 171 So. 332.

It is further alleged that on December 2, 1936, relator's counsel wrote the respondent State Comptroller, advising that relator and others named in the litigation, were ready to pay their taxes as determined by the court:

"That by letter of December 5, 1936, the * * * Comp-

troller replied advising among other things: 'The penalty of two per cent per month on all delinquent taxes is now in effect and such penalty must be paid in connection with all settlements made.'

"That the penalty of two per cent. per month so demanded is that defined by Section 7 (b) of said Chain Store Act, but applicable only when there has been a delinquency in payment without reasonable cause. That afterwards, on to-wit, the 17th day of December, 1936, the next day after the mandate of said Supreme Court was returned to said Circuit Court, petitioner, together with others named as plaintiffs in said Circuit Court suit, after notice to respondent's counsel, petitioned said Circuit Court for leave to file amendments to their bill of complaint in said cause, setting up their efforts to obtain decision as to their liability, if any, under said Act, and the result of said Supreme Court decision of December first, their willingness to pay in accordance with that decision, their tender to the respondent Comptroller, as aforesaid, and his demand for two per cent per month penalty, and praying that the respondent Comptroller be required to accept payments without such penalty added, together with all proper applications for permits, applications for licenses, and returns of gross receipts taxes on forms duly prescribed by said Comptroller. That said application for amendments was opposed by counsel for respondent, and on Saturday, December 19, 1936, the Judge of said Circuit Court denied leave to file such amendments, and held that the relief prayed for thereby constituted a new suit, not within his jurisdiction when opposed by said Comptroller."

"That prior to the making of said order of December 19, 1936, this petitioner, by his counsel, on to-wit, December 18, 1936, forwarded to the respondent this petitioner's

check for $2,000.00 as flat sum taxes from July 1, 1936, to July 1, 1937, on said ten lumber yards; also check of this petitioner for $601.33, to cover gross receipts tax since February 25, 1936, to November 30, 1936, inclusive, on retail sales of lumber and other personal property made in and at seven of said retail lumber yards. That on to-wit, December 19, 1936, this petitioner, by his counsel, forwarded to the respondent Comptroller, a further check for $969.07, as gross receipts tax for the same period covering all retail sales of lumber or other personal property, made at and in the three remaining lumber yards owned and operated by petitioner as aforesaid. That prior to the filing of said suit in said Circuit Court of Duval County, and during the period of uncertainty as to whether any further proceedings would be had, after the rendition of said order of the Circuit Court of Leon County, Florida, dated March 30, 1936, as aforesaid, petitioner paid the respondent Comptroller $2,000.00 flat sum taxes to cover the license year on said ten lumber yards for the year beginning July 1, 1935, and at the same time filed with said Comptroller applications for permits, together with 50 cents for each yard, and obtained permits as contemplated by Section 3 of said Act, and still holds the same. That along with the three checks above mentioned, remitted on December 18th and 19th, 1936, respectively, petitioner's counsel forwarded to the respondent Comptroller ten applications for retailer's licenses for the current license year, duly prepared on forms prescribed by the respondent Comptroller. That along with said checks petitioner's counsel also forwarded proper gross receipts tax returns covering each of said lumber yards and for each monthly period beginning with February 26th and ending November 30th, 1936. That petitioner has filed all papers and paid all moneys to the respondent Comptroller

to entitle it to have a license issued for the current license year, beginning July 1, 1936, for each of its ten lumber yards located as aforesaid. Nevertheless the respondent Comptroller has refused, and still refuses to issue the same, claiming that he is entitled to receive from petitioner the additional sum of two per cent per month penalty upon the $2,000.00 flat sum tax now payable for the license year beginning July 1, 1936, and two per cent per month upon the gross receipts tax as finally determined by this Court, calculated as of the 15th of each month, beginning with April 15, 1936.

"That petitioner has not been delinquent in the matter of paying what it was liable for under said Act. On the contrary, it has been diligently attempting to find out whether it was subject to said Act, and, if so, to what extent, and has resorted to the sundry judicial proceedings aforesaid for that purpose. That the first contest to which petitioner was a party, as aforesaid, resulted in the decisions by the Supreme Court of Florida the latter part of November, 1935, holding all of the gross receipts tax prescribed by said Act in excess of one-half of one per cent void. That the further decision rendered by the Circuit Court of Leon County, Florida, on March 30, 1936, as aforesaid, affirmed by the petitions of the respondent Comptroller, and the orders of said Supreme Court on April 23, and April 25, 1936, had the effect of eliminating practically eight months of the one-half of one per cent. gross receipts tax—that is to say, all that accrued up to and including February 25, 1936. That the further contest made by this petitioner and other lumber-yard operators in said Circuit Court in and for Duval County, Florida, as aforesaid, resulted in the elimination of all the gross receipts tax upon sales made to building contractors, as aforesaid. That this petitioner,

together with others similarly situated were not able to thus procure a final determination of their liability until all of said litigations were concluded in manner aforesaid, and when so concluded, they promptly offered to pay what the Courts finally said should be paid. That in these circumstances Petitioner says it has not been delinquent, and should not be required to pay the two per cent penalty per month now demanded by the respondent Comptroller, either under Section 7 (b) of said Act, or any other provision thereof. That if said Section 7 (b) of said Act be enforced as against petitioner under the circumstances aforesaid, then this petitioner will be deprived of its property without due process of law, and without having been able to secure free access to the Courts of this State for the purpose of determining its *bona fide* contest in which it has from time to time been partially sustained, as aforesaid. That petitioner hereby invokes the protection afforded by Sections 4 and 12 of the Florida Declaration of Rights, and hereby invokes the Fourteenth Amendment to the Federal Constitution as its protection against the enforcement of said two per cent per month penalties, when the effort on the part of the respondent Comptroller, as aforesaid, is applied to the facts and circumstances hereinbefore set forth.

"Now, THEREFORE, we being willing that full and speedy justice shall be done in the premises, do command you, J. M. Lee, as Comptroller of the State of Florida, forthwith to issue to East Coast Lumber & Supply Co., a corporation, licenses under Chapter 16848, Laws of Florida, 1935, for the operation, during the license year beginning July 1, 1936, for its ten lumber yards located in the following cities and towns in the State of Florida; one in Titusville, one in Cocoa, one in Eau Gallie, one in Melbourne, one in Sebastian, one in Fort Pierce, one in Stuart,

one in Okeechobee, one in West Palm Beach, and one in Miami;

"Or, failing so to do, that you do appear before this Court at Tallahassee, Florida, on the 31st day of December, A. D. 1936, at ten o'clock A. M., and show cause why you refuse so to do; and have you then and there this writ."

A motion to quash the alternative writ includes the following grounds:

"The facts stated in said alternative writ affirmatively show the Comptroller should not issue the licenses therein requested until relator shall have complied with Subsection (b) of Section 7 of Chapter 16848, Acts of Florida, 1935, by including in said tax 2% per month interest on the taxes determined to be due from the date said taxes should have been paid.

"No duty rests on the Comptroller to license any store under Chapter 16848, Laws of Florida, 1935, unless all taxes due thereon by date prescribed for their payment are paid, including as a part of said tax interest upon unpaid amounts at the rate of 2% per month from the date prescribed for payment until paid.

"The said alternative writ affirmatively shows that interest at the rate of 2% per month from February 26, 1936, is required by said Act to be included as part of said tax due under the Gross Receipts provisions of said Chapter 16848, Laws of Florida, 1935.

"The alternative writ affirmatively shows that interest at the rate of 2% per month is required by said Act to be included as part of the A tax from date said A tax should have been paid."

Chapter 16848 contains the following:

"Section 3. PERMITS. Thirty days after the effective date of this Act, it shall be unlawful for any person to en-

gage in or transact business as a retailer within this State, unless a permit or permits shall have been issued to him as hereinafter prescribed. Every person desiring to engage in or conduct business as a retailer within this State shall file with the Comptroller an application for a permit or permits. * * *

"Section 4. TAX. For the privilege of continuing in or engaging in the business of a retailer as defined in this Act, there is hereby imposed upon every person, firm, corporation, association or copartnership, trust or joint stock company, and any firm however organized or whatever be the plan of operation, shall under the terms of this Act be required to obtain a permit or license to operate a store in this State, a tax which shall be equal to the amount due under the provisions of Subdivision A, and the amount due under the provisions of Subdivision B of Section 4 of this Act; in order to equitably and properly fix the formula upon which the herein license fees shall be based and so that the factor of number of stores and the factor of amount of business done under the privilege shall be included in the formula. The specific amount to be determined as follows:

"SUBDIVISION A.

"CLASS 1. Upon one store, the flat sum of $10.00.

"CLASS 2. Upon chains of more than one but not more than three stores, the flat sum of $50.00 for each said store.

"CLASS 3. Upon chains of more than three, but not more than six stores, the flat sum of $100.00 for each said store.

"CLASS 4. Upon chains of more than six but not more than ten stores, the flat sum of $200.00 for each said store.

"CLASS 5. Upon chains of more than ten but not more than fifteen stores, the flat sum of $300.00 for each said store.

"CLASS 6. Upon chains of more than fifteen stores the flat sum of $400.00 for each said store.

"SUBDIVISION B.

"CLASS 1. Upon one store, also an amount equal to one-half of one per cent of the gross receipts from all sales as defined in this Act."

(Classes 2, 3, 4, 5, 6 of Subdivision B were held to be inoperative, State, *ex rel.* Lane Drug Stores, Inc., v. Simpson, 122 Fla. 582, 639, 166 So. 227, 249).

"SECTION 7. AMOUNT OF TAX. The taxes levied and imposed by Subdivision A of Section 4 of this Act shall be due and payable on the first day of July of each and every year, at which time the Comptroller of the State of Florida shall issue the license after ascertaining from the applicant therefor the facts with reference to the number of stores owned or controlled by said applicant. The taxes levied and imposed by Subdivision B of Section 4 of this Act shall be paid monthly and for the purpose of ascertaining the amount, every person coming within the provisions of this Act, on or before the fifteenth day of August, 1935, and on or before the fifteenth day of every calendar month thereafter, individually or by duly authorized officer or agent, shall make and file with the Comptroller a written return, in the manner and form designated or prescribed by said Comptroller, and upon blanks furnished by him showing the amount of gross receipts from sales by such person during the preceding calendar month and the amount of tax for which such person is liable for the current calendar month, and with such written return such person shall remit to the Comptroller the amount of said tax due from such person. * * *

"(b) If the amount due by any person as the tax imposed by this Act is not paid on or before the date prescribed for its payment, there shall be collected, as a part of the tax, interest upon said unpaid amounts, at the rate of two per centum (2%) per month from the date prescribed for its payment until it is paid."

"Section 14. Enforcement. * * * And the Comptroller is hereby authorized and empowered to adjust and make proper settlement in case of overpayment, and there is hereby appropriated a sufficient amount for the Comptroller to refund any over-payment when and if on proper application and proof he deems it necessary to make such refund; and this provision shall in no way prejudice any right of action that may accrue to any person, liable for the payment of the tax or taxes herein prescribed, to contest in any court of competent jurisdiction the payment of any or all the taxes herein prescribed and provided for; provided, however, that no suit or action shall be instituted in any court for the purpose of avoiding or lessening the payment of any tax due hereunder as determined by the Comptroller unless at the time of the institution of such proceeding the person liable for such tax shall deposit in the registry of the court or other depository designated by the court, the full amount of the tax due at the time of the institution of such suit or action as determined by the Comptroller and such suit or action shall not be maintained, and any order entered or process issued therein shall be vacated and be void unless such person shall continue to deposit in such registry or depository all taxes accruing during the pendency of the proceedings as determined by the. Comptroller; and provided further, that no injunctive or other process obtained by any person to avoid or lessen the amount of tax payable by him hereunder and no adjudica-

tion of the illegality of any tax levied, or liability imposed hereunder shall operate to excuse or delay or lessen the full payment of any tax due by any other person as determined by the Comptroller unless such adjudication shall be by the court of last resort upon such question."

The relator's alternative writ of mandamus seeks to compel the respondent State Comptroller to issue to relator licenses under Chapter 16848, Laws of Florida, 1935, for the operation during the license year beginning July 1, 1936, of its retail dealer's business, without the payment of interest on past due taxes, the relator having tendered in December, 1936, the flat license tax for the year July 1, 1936, to July 1, 1937, and the gross receipts taxes from February 25, 1936, to November 30, 1936, but tendering no interest on the unpaid and past due taxes as required by the Statute.

Mandamus cannot be used to compel the exercise of an official function unless it is the clear legal duty of the officer to perform the official act as demanded, and there is no adequate remedy.

The statute expressly provides that:

"If the amount due by any person as the tax imposed by this Act is not paid on or before the date prescribed for its payment, there shall be collected, as a part of the tax, interest upon said unpaid amounts, at the rate of two per centum (2%) per month from the date prescribed for its payment until it is paid."

Definite amounts are required to be paid at stated times by any person, corporation, etc., for the privilege of continuing in or engaging in the business of a retailer as defined in the Act; and neither the initial tax demanded nor the provision that if the tax is not duly paid, "there shall be collected, as a part of the tax, interest upon said unpaid amounts, at the rate of two per centum (2%) per month

* * * until it is paid," has been declared illegal, and neither is now claimed to be illegal. Therefore it is the plain statutory duty of the respondent State Comptroller to collect the (2%) per month interest on unpaid taxes "as a part of the tax"; and there is no statute to the contrary.

Section 14 of the Act afforded the relator and others a means to avoid the interest payments by depositing in the registry of the court or other depository designated by the court, the full amount of the tax due at the time of the institution of the suit or action, such deposits to be held to abide the result of the suit or action, as was done in other actions challenging the validity of the taxes imposed by Chapter 16848.

There being no statute authorizing the State Comptroller to accept less than the amounts required by the statute including the 2% per month interest on past due amounts, and no part of the required payments being now alleged to be illegal as enacted, it seems clear that there is no authority or duty imposed by law upon the State Comptroller to perform the official act demanded of him; and the court has no authority to suspend the operation of a statute not alleged to be unconstitutional, there being only general allegations that though the amounts of the taxes were not duly paid after the validity of the taxes was adjudicated, the collection of interest thereon for the time since the validity of the tax was adjudged would deprive relator of its property without due process of law and deny to it free access to the courts to have its rights fully adjudicated. Only the tax adjudicated to be valid on February 25, 1936, is demanded by the State Comptroller with interest thereon for a period since the adjudication of the validity of the tax.

Chapter 16848 mandatorily requires the payment of specific interest upon any amounts not tendered when due

as taxes; and the statute does not contemplate the non-payment, pending litigation, of such interest upon taxes adjudicated to be valid.

The general rule is that where in good faith liability to a tax is contested in the courts until after the tax is due and payable, the taxpayer is liable for interest on the unpaid amounts as may be provided by law if the tax is adjudged to be valid. And where a severable portion only of the tax is adjudged to be valid, the taxpayer is liable for interest on the unpaid valid portion of the tax, unless the law otherwise provides. Hamel v. Marlow, 171 Miss. 559, 157 So. 905, 96 A. L. R. 924, and authorities cited; Power v. City of Detroit, 139 Mich. 30, 102 N. W. 288, 5 Ann. Cas. 645, and cases cited in 96 A. L. R. 926, *et seq.*

The litigation which terminated December 1, 1936, had relation to the application to the relator of the definitions, "business," "retailer" and other terms contained in Chapter 16848.

In United States Trust Co. v. New Mexico, 183 U. S. 535, 22 Sup. Ct. 172, 46 L. Ed. 315, the State intervened in a mortgage foreclosure suit and prayed for the payment of ad valorem taxes and interest; and the court held that:

"Until there was an identification of the property subject to taxation, and a determination of the amount of taxes due, it would be inequitable to charge penalties for non-payment."

The Court also stated:

"This is not a suit brought by a property holder to restrain the collection of taxes, in which case it would be incumbent upon him to pay, or tender, the amount conceded to be due, but one in which the authorities are the moving party seeking to collect taxes, and in which the liability *in toto* is denied, and the property subject to taxation not

fully identified or the amount of taxes determined until the final judgment."

In this case a privilege tax is determined by the statute; and the action is by the taxpayer to avoid the payment of interest on taxes past due and unpaid, the tax having been challenged in litigation and its validity adjudicated, and the taxpayer did not make the deposit of taxes due subject to the litigation as expressly required by the statute to meet the situation here presented.

The State Comptroller, under a circuit court adjudication requires taxes to be paid *only* from the time the validity of the demanded tax has been adjudicated and not from the date of payment fixed by the taxing statute.

Other decisions excluding interest collections are controlled by statutes, or the exclusion of interest is authorized by particular facts, before a final determination of the validity of the tax, not after the legality of the tax as a whole or as to a severable, definite portion has been adjudicated and the amount is made certain by the statute.

Motion to quash alternative writ granted.

ELLIS, C. J., and TERRELL, BROWN, DAVIS, J. J., concur.

BUFORD, J., dissents.

DAVIS, J. (concurring).—On the theory that the monthly amount of two per cent is legal interest on the state's money detained and not a true penalty, I concur in the opinion. Were the involved exaction a penalty, I think the statute would be unconstitutional if so applied as to force prepayment of the penalty as a condition to litigating its collectibility.

BUFORD, J. (dissenting).—I think the law as stated in the opinion is applicable to the tax collectible under Subdivision A, but not to the tax accruing under Subdivision B.